**Nos. 22-1269, 22-1270**

---

# United States Court of Appeals

**for the Federal Circuit**

---

**PARUS HOLDINGS INC.**
*Appellant*

v.

**GOOGLE LLC, SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., LG ELECTRONICS INC., LG ELECTRONIC USA, INC.,**
*Appellees*

---

**Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2020-00846, IPR2020-00847**

---

## CORRECTED RESPONSE BRIEF OF APPELLEES

Nathan R. Speed
Richard F. Giunta
Gregory F. Corbett
Elisabeth H. Hunt
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Gregory S. Nieberg
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue
New York, NY 10158
Telephone: (212) 697-7890

*Counsel for Appellees*

**U.S. Patent No. 7,076,431 – Claims 1, 2, 4-7, 9, 10, 13 and 14**

1. [Preamble] A system for retrieving information from pre-selected web sites by uttering speech commands into a voice enabled device and for providing to users retrieved information in an audio form via said Voice enabled device, said system comprising:

[1a] a computer, said computer operatively connected to the internet;

[1b] a voice enabled device operatively connected to said computer, said Voice enabled device configured to receive speech commands from users;

[1c] at least one speaker-independent speech recognition device, said speaker-independent speech recognition device operatively connected to said computer and to said voice enabled device;

[1d] at least one speech synthesis device, said speech synthesis device operatively connected to said computer and to said voice enabled device;

[1e] at least one instruction set for identifying said information to be retrieved, said instruction set being associated with said computer, said instruction set comprising: a plurality of pre-selected web site addresses, each said web site address identifying a web site containing said information to be retrieved;

[1f] at least one recognition grammar associated with said computer, each said recognition grammar corresponding to each said instruction set and corresponding to a speech command;

[1g] said speech command comprising an information request selectable by the user;

[1h] said speaker-independent speech recognition device configured to receive from users via said voice enabled device said speech command and to select the corresponding recognition grammar upon receiving said speech command;

[1i]said computer configured to retrieve said instruction set corresponding to said recognition grammar selected by said speaker-independent speech recognition device;

[1j]said computer further configured to access at least one of said plurality of web sites identified by said instruction set to obtain said information to be retrieved, said computer configured to first access said first web site of said plurality of web sites and, if said information to be retrieved is not found at said first web site, said computer configured to sequentially access said plurality of web sites until said information to be retrieved is found or until said plurality of web sites has been accessed;

[1k]said speech synthesis device configured to produce an audio message containing any retrieved information from said pre-selected web sites, and said speech synthesis device further configured to transmit said audio message to said users via said Voice enabled device.

2. The system of claim 1 wherein said internet is the Internet.

4. The system of claim 1 wherein said voice enabled device is a standard telephone, an IP telephone, a cellular phone, a PDA, a personal computer, a DVD player, a television or other video display device, a CD player, a MP3 player, or any other device capable of transmitting said audio message.

5. The system of claim 1 wherein said speaker-independent speech recognition device is configured to analyze phonemes to recognize said speech commands.

6. The system of claim 1 wherein said speaker-independent speech recognition device is configured to recognize naturally spoken speech commands.

7. The system of claim 1 wherein said instruction set further comprises a content descriptor associated with each said web site address, said content descriptor pre-defining a portion of said web site containing said information to be retrieved.

9. The system of claim 1 wherein said computer is further configured to periodically search said internet to identify new web sites and to add said new web sites to said plurality of web sites.

10. The system of claim 1 wherein said instruction set further comprises a ranking associated with each said web site address, said ranking indicating the order in which the plurality of pre-selected web sites are accessed.

13. The system in claim 10 wherein said computer is configured to access said plurality of web sites in order of ranking to retrieve said information

requested by said user, said computer further configured to first access said web site having the highest ranking.

14. The system of claim 1 further comprising a database operatively connected to said computer, said database configured to store said information gathered from said web sites in response to said information requests.

**U.S. Patent No. 9,451,084 – Claims 1, 2, 4-7, 9, 10 and 14**

1. [Preamble] A system for acquiring information from one or more Sources maintaining a listing of web sites by receiving speech commands uttered by users into a voice-enabled device and for providing information retrieved from the web sites to the users in an audio form via the voice-enabled device, the system comprising:

[1a] at least one computing device, the computing device operatively coupled to one or more networks:

[1b] at least one speaker-independent speech-recognition device, the speaker-independent speech-recognition device operatively connected to the computing device and configured to receive the speech commands;

[1c] at least one speech-synthesis device, the speech-synthesis device operatively connected to the computing device;

[1d] memory operatively associated with the computing device with at least one instruction set for identifying the information to be retrieved, the instruction set being associated with the computing device, the instruction set comprising:

[1e] a plurality of web site addresses for the listing of web sites, each web site address identifying a web site containing the information to be retrieved;

[1f] at least one recognition grammar associated with the computing device, each recognition grammar corresponding to each instruction set and corresponding to a speech command, the speech command comprising an information request provided by the user, the speaker independent speech-recognition device configured to receive the speech command

from the users via the voice-enabled device and to select the corresponding recognition grammar upon receiving the speech command;

[1g] the computing device configured to retrieve the instruction set corresponding to the recognition grammar provided by the speaker-independent speech-recognition device;

[1h] the computing device further configured to access at least one of the plurality of web sites identified by the instruction set to obtain the information to be retrieved, wherein the computing device is further configured to periodically search via the one or more networks to identify new web sites and to add the new web sites to the plurality of web sites, the computing device configured to access a first web site of the plurality of web sites and, if the information to be retrieved is not found at the first web site, the computer configured to access the plurality of web sites remaining in an order defined for accessing the listing of web sites until the information to be retrieved is found in at least one of the plurality of web sites or until the plurality of web sites have been accessed;

[1i] the speech synthesis device configured to produce an audio message containing any retrieved information from the plurality of web sites, and

[1j] the speech synthesis device further configured to transmit the audio message to the users via the Voice-enabled device.

2. The system of claim 1, wherein the one or more networks include the Internet.

4. The system of claim 1, wherein the voice-enabled device is at least one of a standard telephone, an IP telephone, a cellular phone, a PDA, a personal computer, a DVD player, a television or other video display device, a CD player, a MP3 player, and any other device capable of transmitting the audio message.

5. The system of claim 1, wherein the speaker-independent speech recognition device is configured to analyze phonemes to recognize the speech commands.

6. The system of claim 1, wherein the speaker-independent speech-recognition device is configured to recognize naturally spoken speech commands.

7. The system of claim 1, wherein the instruction set further comprises: a content descriptor associated with each web site address, the content descriptor pre-defining a portion of the web site containing the information to be retrieved.

9. The system of claim 1, wherein the computing device is configured to search each of the new web sites without being instructed by the user to determine the availability of each new web site, the duration of time for each new web site to respond to a request from the computer, and changes to the location of the information to be retrieved from each new web site, the computing device further configured to create an order for access to the plurality of new web sites based on the periodic searches.

10. The system of claim 1, wherein the instruction set further comprises a pre-defined order of access associated with each web site address, the pre-defined order of access indicating the order in which the plurality of web sites are accessed.

14. The system of claim 1, further comprising:

a database operatively connected to the computing device, the database configured to store the information gathered from the web sites in response to the information requests.

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1269, 22-1270

**Short Case Caption** Parus Holdings Inc. v. Google LLC

**Filing Party/Entity** Google LLC, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., LG Electronics Inc., and LG Electronics U.S.A., Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/21/2022

Signature: / Nathan R. Speed /

Name: Nathan R. Speed

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Google LLC | | XXVI Holdings Inc.; Alphabet Inc. |
| Samsung Electronics Co. Ltd. | | None. |
| Samsung Electronics America, Inc. | | Samsung Electronics Co. Ltd. |
| LG Electronics Inc. | | LG Corporation |
| LG Electronics U.S.A., Inc. | | LG Electronics Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Anant Saraswat | Wolf, Greenfield & Sacks, P.C.<br>600 Atlantic Avenue<br>Boston, MA 02210 | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| Parus Holdings, Inc. v. Apple Inc., | 6:19-cv-00432 | (W.D. Tex.) |
| Parus Holdings, Inc v. Google LLC | 6:19-cv-00433 (consolidated with 6:19-cv-00432) | (W.D. Tex.) |
| Parus Holdings, Inc. v. LG Electronics, Inc. | 6:19-cv-00437 (consolidated with 6:19-cv-00432) | (W.D. Tex.) |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

5. Related Cases. (cont'd)

| | | |
|---|---|---|
| *Parus Holdings, Inc. v. Samsung Electronics Co., Ltd.*<br>(consolidated with 6:19-cv-00432) | 6:19-cv-00438 | (W.D. Tex.) |
| *Parus Holdings Inc. v. LG Electronics Inc. et al.*, | 3:20-cv-05896 | (N.D. Cal.) |
| *Apple Inc. v. Parus Holdings, Inc.* | Nos. 22-1143, 22-1144 | (Fed. Cir.) |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i
STATEMENT OF RELATED CASES ........ xi
INTRODUCTION ........ 1
STATEMENT OF THE ISSUES ........ 4
STATEMENT OF THE CASE ........ 5
A. PARUS'S PATENTS ........ 5
B. BOARD PROCEEDINGS ........ 7
1. The Petitions Demonstrated the Challenged Claims Obvious, and the Board Instituted *Inter Partes* Review. ........ 7
a. Kovatch Combinations. ........ 7
b. Kurganov-262 Combinations. ........ 8
c. Institution. ........ 11
2. During Trial, Parus Alleged Neither Kovatch nor Kurganov-262 Is Prior Art. ........ 11
a. Parus's Attempts to Antedate Kovatch. ........ 11
b. Parus's Attempts to Antedate Kurganov-262. ........ 15
c. The Parties' Replies and Sur-Replies. ........ 17
3. Final Written Decisions. ........ 19
a. IPR2021-00846. ........ 19
(1) The Board Refused to Consider Parus's Antedating Arguments or Evidence Because Parus Violated the Board's Rules by Not Presenting Them in Its Briefs. ........ 19
(2) The Board Found Kurganov-262 Is Prior Art. ........ 25
b. IPR2021-00847. ........ 27
SUMMARY OF THE ARGUMENT ........ 28
STANDARD OF REVIEW ........ 33
ARGUMENT ........ 34

A. THE BOARD DID NOT ABUSE ITS DISCRETION BY REFUSING TO CONSIDER PARUS'S ANTEDATING EVIDENCE THAT WAS NOT CITED OR EXPLAINED IN PARUS'S BRIEFS. .....34

1. The APA Does Not Obligate the Board to Consider Evidence Whose Significance Was Not Explained in the Briefing. .....34

2. The Board Did Not Misplace the Parties' Respective Burdens. .....40

3. The Board Acted Consistently with the AIA and the Board's Regulations Which Required Parus to Explain the Significance of Its Evidence. .....44

4. Under This Court's Precedent, the Board Was Not Obligated to Consider Evidence Whose Significance Was Not Explained in the Briefing .....47

5. This Case Implicates the Policy Concerns of *General Access*. .....51

B. THE BOARD'S FINDING THAT KURGANOV-262 IS PRIOR ART IS LEGALLY CORRECT AND SUPPORTED BY SUBSTANTIAL EVIDENCE. .....53

1. Parus's Statutory Authority Challenge Is Waived and Meritless. .....53

2. There Are No Legal Errors in, and Substantial Evidence Supports, the Board's Written Description Finding. .....56

a. The Board's Finding That the Priority Application Did Not Adequately Describe the Claimed Invention Is Supported by Substantial Evidence. ..... 57

b. Parus's Belated Attempt to Manufacture a Claim Construction Dispute Fails. ..... 62

CONCLUSION .....65

CERTIFICATE OF COMPLIANCE .....67

# TABLE OF AUTHORITIES

## CASES

*Alacritech, Inc. v. Intel Corp.*,
966 F.3d 1367 (Fed. Cir. 2020) .......... 64

*Apple Inc. v. MPH Techs. Oy*,
2022 WL 215129 (Fed. Cir. Jan. 25, 2022) .......... 63

*Aqua Prods. v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017) (en banc) .......... 29, 37, 38, 39

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) .......... 33

*Arthrex Inc. v. Smith & Nephew, Inc.*,
35 F.4th 1328 (Fed. Cir. 2022) .......... passim

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) .......... 35

*Bilstad v. Wakalopulos*,
386 F.3d 1116 (Fed. Cir. 2004) .......... 33

*Boston Scientific Neuromodulation Corp. v. Nevro Corp.*,
813 Fed App'x 572 (Fed. Cir. 2020) .......... 50, 51

*Cooper v. Goldfarb*,
154 F.3d 1321(Fed. Cir. 1998) .......... 12, 13

*Deckers Corp. v. United States*,
752 F.3d 949 (Fed. Cir. 2014) .......... 55

*Dynamic Drinkware LLC v. Nat'l. Graphics, Inc.*,
IPR2013-00131, 2014 WL 4628897, (PTAB Sept. 12, 2014) .......... 43

*Dynamic Drinkware, LLC v. National Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) .......... 20, 43

*E.I. DuPont de Nemours & Co. v. Synvina C.V.*,
904 F.3d 996 (Fed. Cir. 2008) .......... 47

*Elbit Sys. of Am., LLC v. Thales Visionx, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018) ........................................................................63

*General Access Solutions Ltd. v. Sprint Spectrum L.P.*,
811 Fed App'x 654 (Fed. Cir. 2020) ................................................ 48, 49, 50, 51

*Henny Penny Corp. v. Frymaster, LLC*,
938 F.3d 1324 (Fed. Cir. 2019) .................................................................... 58, 62

*Hicks v. St. Mary's Honor Ctr.*,
756 F. Supp. 1244 (E.D. Mo. 1991) ................................................................42

Homeland Housewares, LLC v. Whirlpool Corp.
865 F.3d 1372 (Fed. Cir. 2017). .......................................................................64

*HTC Corp. v. Cellular Commc'ns Equip. LLC*,
701 F. App'x 978 (Fed. Cir. 2017) ..................................................................64

*Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*,
28 F.4th 1371 (Fed. Cir. 2022) ...................................................................... 38, 39

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ........................................................................33

*In re Lee,*
277 F.3d 1338 (Fed. Cir. 2002) .......................................................................65

*In re Magnum Oil Tools Int'l., Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) .................................................................... 39, 47

*In re NTP, Inc.*,
654 F.3d 1268 (Fed. Cir. 2011) .................................................................... 54, 55

*In re NuVasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ............................................................. 35, 54, 64

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge*,
821 F.3d 1359 (Fed. Cir. 2016) ........................................................................33

*Mahkurhar v. C.R. Bard, Inc.*,
79 F.3d 1572 (Fed. Cir. 1996) ...................................................................... 12, 43

*Nat. Alts. Int'l., Inc. v. Iancu*,
904 F.3d 1375 (Fed. Cir. 2018) ....................................................................55

*Nevro Corp. v. Boston Sci. Neuromodulation Corp.*,
IPR2017-01812, 2019 WL 446307 (PTAB Feb. 1, 2019) ..................................51

*Rovalma, S.A. v. BohlerEdelstahl GmbH & Co. KG*,
856 F.3d 1019 (Fed. Cir. 2017) ....................................................................34

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,*
948 F.3d 1342 (Fed. Cir. 2020) ....................................................................54

*SAS Institute Inc. v. Iancu*,
138 S. Ct. 1348 (2018). ...............................................................................39

*St. Mary's Honor Center v. Hicks*,
509 U.S. 502 (1993) (cleaned up) .......................................................... 42, 43, 44

*Technology Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316 (Fed. Cir. 2008). ....................................................................... 43, 44

*TQ Delta, LLC v. Cisco Sys., Inc.*,
942 F.3d 1352 (Fed. Cir. 2019) ....................................................................61

*Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998) ....................................................................33

*U.S. Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997) ....................................................................64

**STATUTES**

35 U.S.C. § 102 ..................................................................................... passim

35 U.S.C. § 102(b) .................................................................................. 8, 9, 10

35 U.S.C. § 103 ................................................................................ 3, 54, 55, 56

35 U.S.C. § 112 ..................................................................................... passim

35 U.S.C. § 120 ..................................................................................... 9, 10, 33

35 U.S.C. § 311(b) .................................................................................. 54, 55

35 U.S.C. § 316(a)(8) .......... 30, 45

5 U.S.C. § 554(b)(3) .......... 34

5 U.S.C. § 554(c) .......... 34

5 U.S.C. § 556(d) .......... 34

**REGULATIONS**

37 C.F.R. § 42.120 .......... 30, 46

37 C.F.R. § 42.22(a)(2) .......... passim

37 C.F.R. § 42.23(a) .......... 30, 46

37 C.F.R. § 42.24 .......... 44

37 C.F.R. § 42.24(a)(2) .......... 52

37 C.F.R. § 42.6(a)(3) .......... passim

## STATEMENT OF RELATED CASES

The following pending cases in which one or more claims of U.S. Patent Nos. 7,076,431 ("the '431 patent") and 9,451,084 ("the '084 patent") have been asserted may directly affect or be directly affected by this Court's decision in these appeals:

1. *Parus Holdings, Inc. v. Apple, Inc.*, No. 6:19-cv-00432 (W.D. Tex.);
2. *Parus Holdings, Inc. v. Google LLC*, No. 6:19-cv-00433 (W.D. Tex.) (consolidated with 6:19-cv-00432);
3. *Parus Holdings, Inc. v. Samsung Elecs. Co. Ltd.*, No. 6:19-cv-00438 (W.D. Tex.) (consolidated with 6:19-cv-00432);
4. *Parus Holdings, Inc. v. LG Electronics, Inc.*, 6:19-cv-00437 (W.D. Tex.) (consolidated with 6:19-cv-00432);
5. *Parus Holdings, Inc. v. LG Electronics, Inc.*, 3:20-cv-05896 (N.D. Cal.);

The following cases pending before this Court involve the '431 and '084 patents and may directly affect or be directly affected by this Court's decision in this appeal: *Apple Inc. v. Parus Holdings, Inc.*, Nos. 22-1143, -1144 (Fed. Cir.).

## INTRODUCTION

In two well-reasoned final written decisions, the Patent Trial and Appeal Board ("Board") found the challenged claims of Parus's '431 and '084 patents obvious. On appeal, Parus only disputes whether the two primary references underlying the Board's findings were proven to be prior art. The Board's correct prior art determinations should be affirmed.

**Kovatch**. In IPR2020-00846, the Board found all challenged claims of the '431 patent obvious over Kovatch. In its patent owner response, Parus alleged it could antedate Kovatch because it conceived and reduced to practice the claimed inventions earlier. Parus does not dispute that it bore a burden of production to produce evidence antedating Kovatch.

Parus's attempt to satisfy its burden of production was woefully inadequate. Parus's briefing failed to cite any evidence with specificity, and failed to provide any explanation of how or why Parus's evidence allegedly established an earlier invention date for any challenged claim. Only in other documents (declarations and claim charts), filed as exhibits to its briefing, did Parus cite evidence with any specificity or explanation of its significance.

Citing its rule against incorporation by reference, the Board properly refused to consider Parus's explanation of the significance of its evidence because that explanation was not in Parus's briefing. Given the absence of any explanation in

Parus's briefing of how or why Parus's evidence was alleged to show that any challenged claim antedated Kovatch, the Board correctly found that Parus failed to properly introduce its antedating evidence into the proceeding and thus failed to meet its burden of production. And because Parus failed to meet its burden of production, the Board properly found that Appellees had proven Kovatch was prior art, without needing to address antedating evidence Parus failed to properly introduce.

On appeal, Parus does not dispute the Board's finding that Parus impermissibly sought to incorporate arguments into its briefs. Instead, Parus argues that this was of no consequence because, as the patent owner, Parus bore no obligation to cite and explain in its briefing the significance of evidence Parus wanted considered, and therefore filing a mountain of uncited and unexplained evidence alone sufficed to meet Parus's burden of production. Not so. Parus's contention that Appellees and the Board had to play archeologist with the record, search through exhibits Parus filed but never cited with specificity in its briefs, and address potential explanations of the evidence's significance nowhere explained in Parus's briefing finds no support in the Administrative Procedure Act ("APA"), the America Invents Act ("AIA"), the Board's regulations, or this Court's precedent.

**Kurganov-262**. In IPR2020-00846 and IPR2020-00847, respectively, the Board found claim 9 of the '431 patent and all challenged claims of the '084 patent obvious over Kurganov-262. In determining whether Kurganov-262 is prior art to

the challenged claims, the Board needed to determine the claims' effective filing date, a determination that required the Board to assess whether an earlier application in the patents' priority chains provided written description support. The Board's finding that the earlier application lacked such support was correct and supported by substantial evidence.

On appeal, Parus strains to allege legal errors in the Board's well-reasoned decisions.

First, Parus argues the Board exceeded its statutory authority by conducting a § 112 analysis in determining the claims' effective filing date because Congress only authorized the Board to make §§ 102/103 findings in *inter partes* review proceedings. Parus waived this argument by not advancing it at trial below. Regardless, the Court's binding decision in *Arthrex Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022) squarely rejects Parus's argument.

Second, Parus manufactures a claim construction dispute centered on the term "web sites." Parus forfeited this argument because it never raised it below. Additionally, the argument lacks merit because the Board correctly found that "web sites" means actual websites, and not devices that merely "appear as 'web sites,'" as Parus now contends on appeal.

## STATEMENT OF THE ISSUES

For all challenged claims of the ’431 patent (IPR2020-00846):

1. Whether the APA, the AIA, the Board’s regulations, or this Court’s precedent obligated the Board to independently analyze evidence Parus filed but failed in its briefs to (i) cite with specificity and/or (ii) explain the significance of?

For claim 9 of the ’431 patent (IPR2020-00846) and all challenged claims of the ’084 patent (IPR2020-00847):

1. Whether Parus waived its challenge to the Board’s statutory authority to analyze § 112 issues in determining a reference’s prior art status by not raising that argument during the trial? Alternatively, whether Parus’s argument is foreclosed by *Arthrex*?

2. Whether the Board reasonably interpreted the specification of an earlier-filed application as failing to provide adequate § 112 written description support for the claims where substantial evidence (*i.e.*, the specification’s text and Appellees’ expert testimony) amply supports the Board’s interpretation?

3. Whether Parus forfeited its opportunity to seek construction of the term “web site” by never raising the issue before the Board? Alternatively, whether the Board already (and correctly) rejected Parus’s belated claim construction in finding that “web site,” unsurprisingly, means website?

## STATEMENT OF THE CASE

### A. PARUS'S PATENTS

The '431 and '084 patents ("Parus patents") share a common specification[1] and title: "Robust Voice Browser System and Voice Activated Device Controller." Appx96-115, Appx116-137. Both claim priority, through continuation applications, to a February 4, 2000 provisional application. Appx96, Appx116-117.

In the patents' title, the "Robust Voice Browser System" is a "first embodiment" described at columns 4-17 of the specification and the "Voice Activated Device Controller" is a "second embodiment" described at columns 17-19. The voice-browser system embodiment "allow[s] users to gather information from ***web sites*** by using voice enabled devices, such as wireline or wireless telephones."[2] Appx104 (2:62-65); Appx105 (4:30-34). The voice-activated device controller embodiment "us[es] voice commands to control and monitor ***devices*** connected to a network," such as "TVs,...lighting, sprinklers," etc. Appx105 (3:20-23); Appx112 (17:36-46). The claims challenged are directed to the first embodiment. Appx113-114; Appx136-137.

---

[1] Appellees cite the '431 patent though the '084 patent has identical disclosures.

[2] Emphasis added unless otherwise noted.

In the claimed voice-browser embodiment, users make (via telephone) a spoken request to a server system containing "speech recognition software" that recognizes spoken commands. Appx105-106 (4:30-53, 5:60-6:8), Appx111 (15:40-16:5), Appx100-101 (FIGs. 1, 3); Appx1636-1638 (¶¶49-52). A database connected to the server system contains URLs of a pre-selected set of websites, organized into categories "according to the type of information provided by each web site"—*e.g.*, "web sites that provide 'weather' information," "web sites that provide 'stock' information." Appx106 (5:3-32).

Each website within a category is ranked based on how quickly it responds to requests and whether the response is complete and properly formatted. Appx107 (7:4-11), Appx111 (16:56-17:12). The websites' rankings determine the order in which websites are accessed to retrieve information. Appx111 (16:31-43). If requested information cannot be found at the highest-ranked website, the second-ranked website is searched, "and so forth…until the requested information is retrieved or no more web sites left to check." Appx111 (16:36-43). A "polling mechanism" periodically polls/pings websites "listed in the database" and re-ranks them based on response time and completeness. Appx111-112 (16:56-17:28); Appx107 (7:2-9).

Information retrieved from a website is "conver[ted] into audio" using "speech synthesis software" and "transmitted to the user's voice enabled device," *e.g.*, telephone. Appx111 (15:31-36, 16:23-30).

### B. BOARD PROCEEDINGS

#### 1. The Petitions Demonstrated the Challenged Claims Obvious, and the Board Instituted *Inter Partes* Review.

Appellees filed two petitions: one against claims 1-2, 4-7, 9-10, and 13-14 of the '431 patent, and another against claims 1-2, 4-7, 10, and 14 of the '084 patent. Appx1007-1099; Appx9155-9247. Each petition alleged the claims would have been obvious over prior art combinations that used either Kovatch or Kurganov-262 as the primary reference. Appx1021-1022; Appx9168-9169.

##### a. Kovatch Combinations.

Kovatch (Appx1827-1868) claims priority to a provisional filed January 4, 2000—one month before the earliest listed priority date for the Parus patents. Appx1827.

Kovatch describes "interactive voice response systems" that provide users access to a computer network (*e.g.*, Internet) via telephone. Appx1828 (1:9-12); Appx1654. Kovatch's system uses speech recognition software to analyze and match user speech to an index of destinations to produce a list of valid destinations (*e.g.*, websites) that could satisfy a request. Appx1831-1832 (4:23-30, 5:25-27), Appx1835 (8:23-28); Appx1658-1662. Once the system identifies a website from

the list of websites, the system converts text information from the selected website into audio and provides that audio to the user. Appx1831 (4:25-30), Appx1843 (16:21-26); Appx1847-1848, Appx1659-1660.

Appellees argued Kovatch discloses most elements of the challenged claims and that those elements not disclosed would have been obvious in view of secondary references. Appx1032-1070; Appx9198-9237. Parus no longer disputes that if Kovatch is prior art, Appellees' Kovatch-based combinations render the claims obvious.

**b. Kurganov-262 Combinations.**

Kurganov-262 (Appx1811-1826) is the publication of U.S. Application No. 09/776,996 ("'996 Application"). The '431 patent is a direct "continuation" of the '996 Application, and the '084 patent claims priority to the '996 Application through a chain of continuations. Appx104, Appx125. Other than their claims, the disclosures of Kurganov-262 and the Parus patents are identical. Opening Brief ("Br.") at 16.

Appellees argued Kurganov-262, which published in 2001, is pre-AIA 35 U.S.C. § 102(b) prior art to claim 9 of the '431 patent and all challenged claims of the '084 patent because those claims are not entitled to the benefit of the '996

Application's filing date.[3] Without that date, the claims' earliest possible priority date is April 9, 2004 (*i.e.*, the date of the next earliest application[4] in the priority chain (Appx104, Appx125)), making Kurganov-262 § 102(b) prior art.

In establishing Kurganov-262 as prior art, Appellees explained claim 9 of the '431 patent and all challenged claims of the '084 patent recited a voice-based information retrieval system configured to "periodically search via [] one or more networks to identify ***new*** web sites and to add the ***new*** web sites" to the plurality of websites the system maintains. Appx136 (claim 1); Appx114 (claim 9). For these claims to be entitled to the '996 Application's filing date, that application's disclosure had to provide written description support for those later-filed claims. 35 U.S.C. § 120. Appellees argued there was no such support in the '996 Application. Appx1070-1074; Appx9173-9178.

Beginning with the first embodiment, Appellees (and their expert) explained that the only action the specification describes as occurring "periodic[ally]" is "polling" ***known*** websites to measure their response times. Appx1071 (citing Appx105 (3:58-4:8), Appx107 (7:4-9), Appx111 (16:56-17:28); Appx1746-1747

---

[3] Appellees also argued Kurganov-262 was prior art to claim 14 of the '431 patent, but the Board declined to consider that argument because it found claim 14 unpatentable for other reasons. Appx63; Appx93.

[4] That application—10/821,690—became the '431 patent. Appx96; Appx116-117.

(¶¶210-211)); Appx9174. The system only polls "sites [already] ***listed in the database***" (*i.e.*, the plurality of websites the system already maintains) and does not identify or ***add new*** websites to the database, as the relevant claims require. Appx1071 (citing Appx106 (5:30-32), Appx111-112 (16:32-36, 16:58-62); Appx1747-1748 (¶¶211-213)); Appx9174.

As for the second (unclaimed) embodiment, it can "detect whether new ***devices*** have been added to the system" (Appx113 (19:12-15)), but Appellees (and their expert) explained it does not identify new ***websites***. Appx1071 (citing Appx1748-1749 (¶214)); Appx9174. As Appellees' expert testified, the "household devices" described for the second embodiment—lights, sprinklers, etc. (*e.g.*, Appx112 (17:42-46))—do not meet the ordinary meaning of "web sites," and the specification did not redefine "web sites" to cover such devices. Appx1749-1754 (¶¶215-221); Appx1071-1073; Appx9174-9176. Rather, the specification describes websites consistent with that term's ordinary meaning—denoting sites such as www.cnn.com. Appx110.

Because the challenged claims recite a system not described in the '996 Application, Appellees argued the claims were not entitled its priority date under § 120, making Kurganov-262 § 102(b) prior art. Appx1075; Appx9178.

Appellees then demonstrated that although a system periodically searching for new websites and adding them to the system's list of websites was not described in

Kurganov-262, it would have been obvious to modify Kurganov-262 to implement such a system. Appx1082-1083; Appx9186-9190. Parus has never disputed that if Kurganov-262 is prior art, Appellees' Kurganov-262-based combination renders obvious claim 9 of the '431 patent and all challenged claims of the '084 patent.

#### c. Institution.

The Board instituted review because the petitions established a reasonable likelihood that Appellees would prevail. Appx1207-1261; Appx9354-9402.

### 2. During Trial, Parus Alleged Neither Kovatch nor Kurganov-262 Is Prior Art.

Below, Parus advanced myriad arguments in an attempt to save its claims. Parus abandoned most of those arguments and now only argues neither Kovatch nor Kurganov-262 is prior art. In summarizing Parus's arguments before the Board, Appellees focus on Parus's arguments concerning Kovatch's and Kurganov-262's prior-art status.

#### a. Parus's Attempts to Antedate Kovatch.

In its patent owner responses, Parus alleged Kovatch was not prior art to the challenged claims "because the inventors conceived of the claimed subject matter before Kovatch and were reasonably diligent to reduce the concept to practice." Appx1332; Appx9479.

Kovatch could be antedated if: (1) the inventors conceived and actually reduced the invention to practice before Kovatch's January 4, 2000 priority date[5] or (2) the inventors conceived the invention before January 4, 2000, reduced it to practice after January 4, 2000, and were continuously diligent in pursuing that reduction to practice from just before January 4, 2000 to the later date.[6] Parus alleged Kovatch was antedated both ways.

Other than reciting the law, everything Parus's responses said with respect to conception of the claimed subject matter of 19 challenged claims across two patents is reproduced below, with the lone citation to evidence bolded:

> The inventors conceived of the claimed subject matter before Kovatch's January 4, 2000 U.S. priority filing date…
>
> Here, the source code, documents, and testimony show that at least by July 12, 1999, Alexander Kurganov, and Valery Zhukov conceived of and invented the claimed subject matter while working on the web-based upgrades to the Webley Assistant. **Kurganov Decl. at ¶ 13**. The upgrades to the Webley Assistant approached retrieving information from websites in a different manner than prior art systems because the system sequentially accessed pre-selected websites until the information to be retrieved was found or all of the pre-selected websites had been accessed. The upgraded Webley Assistant was the first system to employ its information retrieval in this novel manner.
>
> As shown through Alexander Kurganov's testimony, which is corroborated by the time-stamped source code, emails, documents, and

[5] *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998).

[6] *Mahkurhar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996).

> the testimony of Paul Mulka and Benedict Occhiogrosso, the inventors conceived of the subject matter no later than July 12, 1999.

Appx1333-1334; Appx9480-9481.

The only evidence Parus cited to support its conception allegation was a single paragraph from a named inventor's declaration. Appx7763 (¶13). Parus cited no exhibit(s) with specificity to substantiate the conclusory assertion that "time-stamped source code, emails, documents, and the testimony of Paul Mulka and Benedict Occhiogrosso" demonstrated conception of the nineteen challenged claims, let alone explain how or why any evidence supported this conclusory assertion.

With respect to reduction to practice, Parus alleged the invention was actually reduced to practice by December 31, 1999, when the inventors created a prototype called the Webley Assistant II. The entirety of Parus's allegation was:

> The evidence produced in Mr. Kurganov's declaration, along with the accompanying exhibits, demonstrate that the enhancements to the Webley Assistant reduced the '431 and '084 inventions to practice in a prototype no later than December 31, 1999, five days before Kovatch's earliest filing date of January 4, 2000.

Appx1334; Appx9481.

Mr. Kurganov is an inventor, so his testimony cannot establish reduction to practice without independent corroborating evidence. *Cooper*, 154 F.3d at 1330. Yet, Parus's responses did not cite a single exhibit with specificity, and did not identify any specific evidence other than "Mr. Kurganov's declaration," to support its allegation that the claimed subject matter was actually reduced to practice by

December 31, 1999. Instead, Parus alleged that "evidence produced in Mr. Kurganov's declaration," along with unspecified "exhibits" accompanying that declaration, "demonstrate that the enhancements to the Webley Assistant" reduced the claimed inventions to practice. Appx1334; Appx9481. As with conception, nowhere in its responses did Parus cite specific exhibits sufficient to substantiate the conclusory assertion of reduction to practice, let alone provide an explanation of how or why any evidence supported this conclusory assertion.

Parus also alleged its inventors further reduced the invention to practice on January 7, 2000—when a "grammar file was entered into the source code revision system"—and that the inventors "worked diligently" on that reduction to practice from January 4, 2000 to January 7, 2000. Appx1334, Appx9481. To support this allegation, Parus cited generally to 71 paragraphs spread across three declarations. Appx1334 (citing Appx9011-9035 (¶¶44-91); Appx9084-9085 (¶¶1-6); Appx7807-7816 (¶¶103-119)); Appx9481 (same). Parus cited no non-testimonial evidence and never even explained whether the cited 71 paragraphs were allegedly relevant to Parus's contention that the invention was actually reduced to practice on January 7, 2000, or to Parus's separate diligence contention, let alone explain how or why the evidence supported either contention. Appx1334, Appx9481.

Finally, "[t]o show diligence," Parus said it "relies on the source code revision logs and emails, as well as the testimony of Paul Mulka," but Parus identified no

particular logs or emails and did not cite a single exhibit number to support its conclusory assertion. Appx1335-1336; Appx9482-9483. Parus also did not explain how or why any of the vaguely-referenced material allegedly demonstrated that the inventors diligently worked on reducing to practice the subject matter of the challenged claims. Appx1334-1335; Appx9481.

**b. Parus's Attempts to Antedate Kurganov-262.**

Parus alleged Kurganov-262 is not prior art to claim 9 of the '431 patent or all challenged claims of the '084 patent because those claims had written description support in—and thus were entitled to the filing date of—the '996 Application. Appx1348-1352; Appx9474-9477.

Without disputing that the relevant claims are directed to the Parus patents' first embodiment (voice-based web browser system), Parus focused its analysis on the patents' second embodiment (voice-activated device controller). Parus alleged functionality the '996 Application describes as performed by the second embodiment on household devices was also applicable to the first embodiment in some way to make the first embodiment search for new websites.

For example, Parus argued the second embodiment's disclosure that "devices appear as 'websites' connected to the network" meant they "***may in fact be web sites***, and operate similarly to the first embodiment." Appx1350; Appx9476. Parus also argued the second embodiment's ability to "detect whether new devices have been

added to the system" in a home network "is consistent" with the first embodiment's ability to "dynamically adapt to changes" in the Internet. Appx1350-51; Appx9476-9477. Thus, Parus argued the first and second embodiments "are not exclusive," and therefore POSAs would have understood the second embodiment's description, including its ability to search for "new devices," "is equally applicable to web sites and to the first embodiment system." Appx1349-1350; Appx9475.

According to Parus, the first embodiment identifies new websites using a "polling" technique that Parus alleged (without citation to the specification) "includes asking for information from a website, including a listing of URLs or asking a website of a search engine to provide new website information." Appx1351-1352.

Parus further argued that the '996 Application's system is "a search engine" and POSAs would have understood search engines can "'identify new websites' or engage in web crawling." Appx1348-1349; Appx9474-9475.

Parus also argued its reduction-to-practice evidence somehow confirmed its written description arguments because the inventors allegedly included the ability to search for and identify new websites in the prototype they allegedly developed. Appx1349; Appx9475.

### c. The Parties' Replies and Sur-Replies.

Starting with Kovatch, Appellees' reply explained there were two independent reasons for rejecting Parus's antedating argument.

First, Parus's responses only included conclusory assertions alleging conception and reduction to practice, as Parus sought to incorporate its antedating arguments and accompanying evidence into the responses by non-specific reference to "***1,300+ pages*** of exhibits," including declarations that themselves included "***23,000+ words*** of analysis/argument" and claim charts that exceeded 100 pages. Appx1394-1396 (emphasis original); Appx9541-9543. Citing the Board's rule against incorporation-by-reference—37 C.F.R. § 42.6(a)(3)—Appellees asked the Board to disregard those antedating arguments Parus failed to set forth in its responses. Appx1396-1397; Appx9543-9544.

Second, Appellees explained that even if the improperly incorporated-by-referenced material was considered, it failed to antedate Kovatch because: (i) Parus relied heavily on inventor testimony lacking corroboration, (ii) Parus's declarations failed to even allege its prototype worked for its intended purpose, and (iii) Parus's declarations failed to show that the prototype met multiple claim limitations. Appx1397-1408; Appx9544-9555.

As for Kurganov-262, Appellees' replies explained that (i) Parus lacked credible evidence POSAs would have understood the specification's described

system includes the ability to identify new websites, and (ii) even if such systems were known outside the specification, that is legally irrelevant to written description which concerns what is disclosed, not what would have been obvious to add to the disclosure. Appx1418; Appx9537. Appellees further explained that Parus's reduction-to-practice evidence was also legally irrelevant to written description (Appx1418-1419; Appx9537-9538), and that the changes in the Internet to which the first embodiment's system adapts were changes within known (*i.e.*, already listed in the system's database) websites, not new websites (Appx1419; Appx9538). Appellees also explained the first embodiment's website "polling" is identified in the specification as a technique for updating the ranking of known websites, not for identifying new websites, and that the patents' claims explicitly distinguish between "polling" websites and "searching" for new websites. Appx1420; Appx9539.

Parus's sur-reply baldly alleged "[t]he POR, associated declarations, cited exhibits, and the declaration of Parus's expert, Benedict Occhiogrosso, demonstrate that Parus conceived and reduced to practice the [claims] before Kovatch's priority date." Appx1435; Appx9580. According to Parus, its "antedating materials… included claim charts that used excerpts from the source code to demonstrate exactly which parts of the source code met the claim limitations." Appx1435-1436; Appx9580-9581. But the sur-reply neither cited any specific claim chart exhibits

nor separately set forth the analysis allegedly in those un-cited charts. Appx1435-1436; Appx9580-9581.

As for Kurganov-262, Parus continued to argue that the first embodiment's "polling" functionality not only updated the rankings of known websites, but also identified new websites. Appx1456-1458; Appx9577-9579. Parus did not, however, refute Appellees' reply showing that (i) the '996 Application only describes the first embodiment's "polling" as applying to known websites and (ii) the Parus patents' claims explicitly distinguish "polling" websites from "searching" for websites.

**3. Final Written Decisions.**

**a. IPR2021-00846.**

The Board's decision in IPR2021-00846 found all challenged claims of the '431 patent obvious over Kovatch. Appx1-65. It separately found claim 9 also obvious over Kurganov-262. *Id.*

**(1) The Board Refused to Consider Parus's Antedating Arguments or Evidence Because Parus Violated the Board's Rules by Not Presenting Them in Its Briefs.**

The Board explained Appellees had the burden of persuading the Board that the challenged claims were unpatentable. Appx12-13. With respect to Kovatch, the Board explained Appellees had an initial burden of production to come forward with prior art rendering the claims unpatentable, and Appellees met that burden by "providing detailed allegations" that Kovatch, dated earlier than the Parus patents'

earliest priority date, renders the challenged claims obvious. *Id.* (citing *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375 (Fed. Cir. 2015)). Once Appellees met their initial burden of production, if Parus sought to antedate Kovatch, the "burden of production then shifted to [Parus] to argue or produce evidence that Kovatch is not prior art." Appx13 (citing cases).

Having correctly established the legal framework, the Board analyzed Parus's conception and reduction-to-practice allegations that were presented "without meaningful explanation in the Response," and found that Parus only "aver[red] generally to" documentary evidence and witness declarations but did "not cite to any such evidence or testimony with specificity." Appx13-14. The Board found that Parus cited "generally to large portions of its supporting declarations" but did "not cite to any evidence with specificity to support [its antedating] arguments" or "explain the basis for [its] conclusion." Appx14. After noting the parallels with this Court's *General Access* decision (discussed *infra* pp. 47-50), the Board found that "Patent Owner has not presented its arguments regarding prior conception and reduction to practice in its Response or Sur-Reply; rather, Patent Owner presents its arguments in several declarations and improperly incorporates those arguments by reference in its Response and Sur-Reply, in violation of [37 C.F.R. §] 42.6(a)(3)." Appx15-Appx16.

The Board went further and walked through Parus's response and sur-reply in striking detail, highlighting over the course of ten pages (1) the conclusory nature of the allegations set forth in Parus's briefs, (2) Parus's blatant attempts to incorporate by reference detailed arguments found only in exhibits accompanying Parus's briefs, and (3) the failure of Parus's briefing to cite any evidence with specificity and to explain the significance of Parus's evidence. Appx15-25.

Starting with conception, the Board found Parus's response only "includes two paragraphs making a conclusory allegation, without specificity, that the named inventors conceived of 'the claimed subject matter' while working on a system named 'the Webley Assistant.'" Appx16. Parus pointed to a single declaration paragraph to support its conception allegation "without explaining its relevance," and Parus's generic assertion that "time-stamped source code, emails, documents" corroborated conception did "not cite to any of this evidence with specificity." Appx16. The Board further explained:

> [Parus's] Response does not attempt to map any evidence to any limitation of any claim of the '431 patent. Nor does the Response point to where such argument and evidence might be found, in declarations or otherwise. Rather, [Parus] invites us to read the Kurganov, Mulka, and Occhiogrosso declarations and construct for ourselves a case for conception of ten claims.

Appx16-17.

As for Parus's sur-reply, the Board found it did not cure the response's inadequacies. The sur-reply said Parus's "antedating materials" included "claim

charts," but the Board noted that the patent owner response never referenced claim charts and the sur-reply "does not indicate where, in the record, the claim charts can be found." Appx17. The Board searched the record in an attempt to determine what Parus meant by its "antedating materials" and identified two witness declarations and two claim charts. Appx17 (citing Exhibit 2020 (Appx7749-7817), Exhibit 2027 (Appx8155-8205), Exhibit 2028 (Appx8206-8262), and Exhibit 2059 (Appx8978-9082)). The Board found that Parus violated Rule 42.6(a)(3) by seeking "to incorporate at least 84 paragraphs (46 pages) of arguments from [the two] declarations and 50 pages of claim charts into [its briefs] to support its allegations of prior conception." Appx17.

As for reduction to practice, although Parus vaguely alleged the declaration of inventor Kurganov "along with the accompanying exhibits" demonstrated reduction to practice of a prototype by December 31, 1999, the Board found Parus did not "further explain this contention or cite to any evidence to support it." Appx17-18.

With respect to Parus's alternative allegation that the inventions were reduced to practice by January 7, 2000, the Board again found Parus's response failed to provide "further explanation" to support this allegation beyond a conclusory assertion that the prototype was finished on that date. Appx18. While Parus "cite[d] generally" to three witness declarations, it failed to explain whether those

declarations were intended to support Parus's January 7, 2000 reduction to practice date or show diligence between January 4 and 7, 2000, leaving the Board unclear as to the declarations' alleged relevance. Appx18.

The Board likewise found Parus's sur-reply on reduction to practice made conclusory assertions without "a citation to support this argument" and "contain[ed] empty assertions, without citation" to supporting evidence. Appx18-19. The Board refused to consider 80 paragraphs of expert testimony and 36 email and source code exhibits belatedly block-cited in the sur-reply because Parus only cited to the materials generally and "without specificity." Appx20.

The Board also explained that Parus's response had not even alleged Parus's prototype—neither the December 31, 1999 nor January 7, 2000 version—worked for its intended purpose, a critical element of reduction to practice. Appx20. Parus's sur-reply alleged generally that the entirety of Mr. Kurganov's declaration and 36 other exhibits demonstrated that the prototypes worked (Appx1445-1446), but as the Board explained, Parus did "not provide further explanation or argument; rather, the detailed explanation of the evidence is contained in Mr. Occhiogrosso's declaration rather than the Response or Sur-Reply." Appx21. The Board found Parus's attempt to incorporate "over 150 paragraphs of arguments from two declarations, as well as over 50 pages of claim charts" improper and thus found that Parus failed to meet its burden of production. Appx21 (including n. 5); *see also* Appx22.

Finally, the Board found Parus's diligence contention unsupported by any specific evidence or argument. Appx23-24. Parus "cite[d] broadly" to three witness declarations without making "clear whether these citations are intended to support [Parus's] reduction to practice or diligence contentions." Appx23. For the alleged diligence period from January 4, 2000 to January 7, 2000, the Board found Parus "does not cite" any evidence "with specificity" nor "provide further explanation of the testimony or other evidence" and its alleged relevance. Appx23-24. As for the sur-reply, it referenced a report by Paul Mulka but the Board found Parus provided "no citation to or explanation of Mr. Mulka's report." Appx24. The Board characterized Parus's sur-reply as "simply an invitation for us to play archeologist with the record, an invitation that we decline." Appx23-24.

Summarizing its findings, the Board said:

> [Parus], by presenting its arguments and evidence in the form of declarations, rather than by including the arguments in its Response and Sur-[R]eply, has not complied with Rule 42.6(a)(3). Thus, we disregard [Parus's] arguments that the inventors conceived of and reduced to practice the invention claimed in the '431 patent prior to the earliest priority date of Kovatch. We conclude that Kovatch is prior art….

Appx25.

The Board then found the challenged claims obvious over the Kovatch combinations, Appx25-52, a finding Parus no longer disputes if Kovatch is prior art.

**(2) The Board Found Kurganov-262 Is Prior Art.**

After summarizing the parties' arguments (Appx54-58), the Board agreed with Appellees that the '996 Application did not support claim 9's requirement that the system be "configured to periodically search via one or more networks to identify new web sites and to add the new web sites to the plurality of web sites." Appx58-61.[7]

The Board agreed with Parus that the specification says the first embodiment's system "dynamically adapt[s] to changes in the rapidly evolving web sites that exist on the Internet" (Appx56), but found that the specification's passages discussing this functionality "describe[] adapting to changes within already known websites, not adapting to changes on the Web involving unknown websites." Appx57 (citing Appx104 (2:30-41), Appx111-112 (16:44-55, 17:26-28)). Supporting its finding, the Board cited Appellees' expert testimony demonstrating that each specification passage referencing website "changes" describes "changes ***within*** each ***known*** website already listed in the system's database." Appx7179-7180 (¶27) (emphasis original) (cited Appx57).

---

[7] Following the parties' convention, the Board cited the '431 patent's specification, but it recognized the salient question was whether the identical disclosure in the '996 Application provided support for claim 9. Appx54 n.11.

The Board then disagreed with Parus that the devices in the second embodiment may ***be*** websites. Appx58-59. Specifically, the Board found the specification's statement, cited by Parus, that "devices" in the second embodiment "appear as 'web sites' connected to the network" does not describe the devices as ***being*** websites. Appx58-59. That the specification placed the phrase "web sites" within quotation marks, the Board explained, "strongly suggests that the devices are not actual web sites—particularly considering the [specification's] numerous listings of actual web sites without such quotation marks." Appx59. The Board again credited Appellees' expert who explained POSAs would have understood the relevant passage "to teach that the devices are, of course, not actually web sites, but only '***appear***' to the device browsing server as URLs." Appx1753-1754 (¶220) (emphasis original) (cited at Appx59).

The Board disagreed with Parus that all teachings described for the second embodiment "would have been…interchangeable" with the first embodiment. Appx59. In particular, the Board found Parus failed to explain how the "polling" or "pinging" the second embodiment uses to detect household devices would search for new websites in the first embodiment. Appx59-60. The Board found the explanation of Parus's expert unpersuasive because it "provides very little detail beyond what" Parus argued in its Response. Appx60. The Board also found that the claims of the '431 patent explicitly distinguish "polling" websites from

"searching" for websites, underscoring that these are different functionalities. Appx60 (citing Appx1420); Appx113-114 (claims 8-9). The Board thus agreed with Appellees that POSAs would not have understood the described "polling" of known websites to include "searching for new…web sites" as claim 9 requires. Appx60.

Finally, the Board rejected Parus's contention that because the specification describes a "web search system," POSAs would have understood it to include the ability to search for new websites. Appx60-61. As the Board explained, Parus's contention lacked support and—at best—suggested an obvious modification which is insufficient for written description. Appx61.

Accordingly, the Board found claim 9 obvious over the Kurganov-262 combination (Appx61-63), a finding Parus has never disputed if Kurganov-262 is prior art.

**b. IPR2021-00847.**

The Board's decision in IPR2021-00847 found each challenged claim of the '084 patent obvious over Kurganov-262. Appx68-94. The Board addressed Parus's antedating argument regarding Kurganov-262, reaching the same conclusion as in the -00846 proceeding, *i.e.*, Kurganov-262 is prior art. Appx82-92. The Board found it unnecessary to address the Kovatch-based grounds because it had already found all challenged claims unpatentable over Kurganov-262. Appx93.

## SUMMARY OF THE ARGUMENT

The Board's final written decisions should be affirmed.

**A. Kovatch.** For the Board's finding that Kovatch renders every challenged claim of the '431 patent obvious, Parus only challenges the Board's finding that Kovatch is prior art. Parus does not dispute that as the party seeking to antedate Kovatch, it bore a burden of production. Yet, Parus failed to specifically cite or explain the significance of its exhibits in its briefing, choosing instead to provide any such citation and explanation in other documents (claim charts and declaration exhibits) that the Board's rules prohibited Parus from incorporating by reference into its briefs. The Board acted within its discretion by (i) finding Parus violated the Board's rule against incorporation by reference and (ii) disregarding antedating evidence that was not properly introduced into the proceeding because Parus failed to cite and explain the significance of that evidence in its briefing.

On appeal, Parus neither disputes that it attempted to incorporate its antedating arguments by reference to its exhibits, nor denies that the Board acted within its discretion by disregarding those arguments. Instead, Parus argues that the Appellees and the Board nevertheless had an obligation to consider hundreds of pages of exhibits—including exhibits never specifically cited in Parus's briefs—simply because Parus filed them with the Board. The law imposes no such

unreasonable burden on the Board (or Appellees), and Parus's four below-summarized arguments to the contrary fail.

1. Parus argues that as the patent owner, Parus bore no obligation to cite and explain in its briefing the alleged significance of evidence Parus wanted considered, and therefore filing a mountain of uncited and unexplained evidence sufficed to meet Parus's burden of production. Not so. Parus's suggestion—that Appellees and the Board were required to play archeologist with the record, search through the exhibits Parus filed (but never cited with specificity in its briefs), and address potential explanations of the evidence's significance nowhere provided in Parus's briefing—is unsupported. The APA imposes no such obligation on the Board, and Parus mischaracterizes this Court's en banc *Aqua Products* decision in contending otherwise. The Board's obligation to take "account of all the evidence of record" bearing on "the issue before it," *Aqua Prods. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) (en banc), does not extend to exhibits and issues a party fails to introduce into the proceeding in compliance with the tribunal's rules.

2. Parus's contention that the burden of production is met when a party merely ***files*** exhibits with a tribunal—even if that party never specifically cites or explains the exhibits' alleged significance in a procedurally proper manner—is wrong. Neither the Supreme Court nor this Court permits a party to satisfy its burden of production by burying a tribunal in unexplained exhibits. Instead, both courts

have consistently explained that a party bearing the burden of production needs to introduce evidence properly ***and*** offer a reasoned explanation of the evidence's relevance that, if accepted as true, would establish the proposition for which the evidence is advanced. Parus failed to meet these requirements by failing to specifically cite and explain, ***in Parus's briefing***, the alleged significance of the filed exhibits.

3. Parus's contention that the AIA and PTO regulations do not require a patent owner to explain the alleged significance of evidence to have that evidence considered is incorrect. The AIA required the PTO to promulgate rules authorizing a patent owner's response and governing the patent owner's submission of evidence. 35 U.S.C. § 316(a)(8). The PTO promulgated rules establishing that the patent owner response is an opposition that must comply with the requirements for a motion (37 C.F.R. §§ 42.23(a), 42.120)), and thus must provide "a full statement of the reasons for the relief requested, including ***a detailed explanation of the significance of the evidence***." 37 C.F.R. § 42.22(a)(2). The Board's refusal to consider evidence that Parus failed to cite and explain the significance of in its briefing is fully consistent with the AIA and the Board's rules.

4. Parus's contention that 37 C.F.R. § 42.6(a)(3) only authorizes the Board to disregard attorney argument, such that the Board had an obligation to consider exhibits nowhere cited and/or explained in Parus's briefs, lacks merit. Once the

Board properly disregards an argument because it cannot be incorporated by reference into a brief, the Board need not consider evidence if "the significance of" that evidence is not explained in the briefing. 37 C.F.R. § 42.22(a)(2). Indeed, this Court has consistently affirmed Board decisions disregarding improperly incorporated arguments and declining to consider evidence explained only within those disregarded arguments.

**B. Kurganov-262.** For the Board's finding that Kurganov-262 renders claim 9 of the '431 patent and all challenged claims of the '084 patent obvious, Parus only challenges the Board's finding that Kurganov-262 is prior art. In finding Kurganov-262 to be prior art, the Board made the factual determination that the earlier-filed '996 Application did not provide the challenged claims with written description support, thereby precluding those claims from claiming priority to the '996 Application's filing date.

The Board's fact finding that the '996 Application's disclosure lacked written description support for the claimed invention is supported by substantial evidence. Parus asks the Court to independently re-weigh the evidence and interpret the '996 Application as describing to POSAs that a function ascribed to one embodiment (*i.e.*, an ability to detect whether new devices have been added to known locations on a home network) was somehow part of a different embodiment and did something different (*i.e.*, search for new websites on the Internet). That is not this Court's role.

The salient question is whether the Board was reasonable in concluding that the disclosure did not include such a description. The Board's conclusion should be affirmed because it was well-reasoned and finds ample support in the record, including in the '996 Application's text and testimony of Appellees' expert.

Given its inability to meaningfully contend that the Board's written description finding lacks substantial evidence support, Parus attempts to manufacture two legal errors where none exist.

1. Parus argues the Board exceeded its statutory authority by conducting a written description analysis as part of its determination that Kurganov-262 was prior art. Parus waived this argument by not presenting it to the Board at trial. Additionally, this Court recently rejected that argument in *Arthrex Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022).

2. Parus advances a new claim construction argument about the meaning of "web site." Parus forfeited that argument by not raising it below. The argument also fails on the merits because the Board resolved any dispute the parties had over the meaning of "web site" by affording the term its plain meaning and finding that the devices the specification describes as "***appear[ing]*** as 'web sites'" are not actual "web sites."

## STANDARD OF REVIEW

"Decisions related to compliance with the Board's procedures are reviewed for an abuse of discretion," *Intelligent Bio-Systems, Inc. v. Illumina Cambridge*, 821 F.3d 1359, 1367 (Fed. Cir. 2016), which occurs when the Board's decision "is clearly unreasonable, arbitrary, or fanciful," *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1121 (Fed. Cir. 2004).

For claims to be entitled to the filing date of an earlier-filed application under 35 U.S.C. § 120, the earlier-filed application must provide written description support for the later-filed claims. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998). Written description is a question of fact, *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc), reviewed for substantial evidence, *In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000).

# ARGUMENT

## A. THE BOARD DID NOT ABUSE ITS DISCRETION BY REFUSING TO CONSIDER PARUS'S ANTEDATING EVIDENCE THAT WAS NOT CITED OR EXPLAINED IN PARUS'S BRIEFS.

### 1. The APA Does Not Obligate the Board to Consider Evidence Whose Significance Was Not Explained in the Briefing.

Citing exhibits spanning ***over 700 appendix pages*** (Br. at 25), Parus takes the remarkable position that even if the Board acted within its discretion by disregarding ***all*** Parus's antedating ***arguments*** because they could not be incorporated by reference into Parus's briefing, the APA nonetheless obligated the Board to evaluate Parus's antedating ***exhibits*** because the Board's findings must be based on the "entire record"—including exhibits not specifically cited, and whose significance is not explained, in Parus's briefing. Br. at 24-26. The APA imposes no such obligation on the Board.

Under the APA, "the Board must timely inform a patent owner of 'the matters of fact and law asserted,' give the patent owner an 'opportunity' for the 'submission and consideration of facts' and 'arguments,' and permit the patent owner 'to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts.'" *Rovalma, S.A. v. BohlerEdelstahl GmbH & Co. KG*, 856 F.3d 1019, 1029 (Fed. Cir. 2017) (quoting 5 U.S.C. §§ 554(b)(3), (c), 556(d)). The Board is obligated to consider arguments ***properly raised*** by the parties and provide a reasoned explanation for why those arguments were or were not

persuasive. *In re NuVasive, Inc.*, 842 F.3d 1376, 1382-83 (Fed. Cir. 2016). These requirements were satisfied here:

1. Parus was afforded the opportunity to submit antedating argument and evidence;
2. the Board considered Parus's submissions;
3. the Board found that Parus's briefing failed to cite any antedating evidence with specificity or properly explain the significance of its alleged antedating evidence;
4. the Board consequently found that Parus failed to meet its burden of production and ruled against Parus on the antedating issue;
5. the Board explained its reasoning in detail.

The APA requires nothing more.

The Board has "broad discretion to regulate the presentation of evidence," *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1081 (Fed. Cir. 2015), and has promulgated rules, *i.e.*, 37 C.F.R. § 42.22(a)(2), that required Parus to explain the significance of any evidence Parus wanted considered. *Infra* p. 46 (explaining Rule 42.22(a)(2) applies and required Parus to provide a "detailed explanation of the significance of the evidence"). While the Board did not explicitly cite Rule 42.22 by number, it plainly applied its requirement that Parus's response include a "detailed explanation of the significance of the evidence." Appx21 (faulting Parus

for including a "***detailed explanation*** of the evidence" only in arguments Parus impermissibly attempted to incorporate into its briefs by reference to Parus's declaration and claim chart exhibits).

Parus's assertion that the Board was obligated to consider all evidence filed that could allegedly antedate Kovatch (Br. at 25) ignores the Board's findings that Parus failed to meet its burden of production because it failed to "properly" produce its antedating evidence in compliance with the Board's rules. Appx21 n.5. Parus's antedating evidence was not introduced properly because (i) Parus failed to cite the evidence "with specificity" (Appx14, Appx16) and (ii) Parus never explained the evidence's significance in its briefing (Appx13-14). *See also* Appx24 (Parus did not meet its "burden to introduce evidence of diligence"), Appx22 ("The explanation of the applicability of this evidence to the claims is in Mr. Kurganov's declaration ***rather than*** [Parus's briefs]…. This is another improper incorporation by reference…."), Appx22-23 ("Once again, any specific argument explaining the relevance of [Parus's] evidence is in [Parus's] declarations, which [Parus] attempts to incorporate by reference improperly."), Appx25 ("[B]y presenting its arguments and evidence in the form of declarations, rather than by including the arguments in its Response and Sur-reply, [Parus] has not complied with Rule 42.6(a)(3).").

Parus made a strategic choice not to explain to the Board (or Appellees) the significance of its allegedly antedating exhibits in its briefs, and must live with the

consequences. The Board properly exercised its discretion by disregarding evidence Parus failed to produce in compliance with the Board's rules.

Parus remarkably asserts that despite its failure to explain the significance of the evidence in its briefing, the APA obligated the Board to assess Parus's exhibits and determine whether any material within them "indicat[es] that the challenged claims were conceived and reduced to practice prior to Kovatch." Br. at 25. In support, Parus principally[8] relies on Judge O'Malley's statement in the *Aqua Products* plurality opinion that to comply with the APA the Board's "substantive decision" regarding a patentee's motion to amend its claims "must be based on *the entirety* of the record." *Aqua Prods.*, 872 F.3d at 1325 (O'Malley, J. op.) (emphasis original).

---

[8] Parus also cites decisions (Br. at 24-25) standing for the non-controversial proposition that when an issue is properly before an agency, the agency's resolution must consider all properly-introduced evidence relevant to the issue, including evidence detracting from the agency's determination. Those cases are inapposite because Parus did not properly put an antedating issue before the Board, given that Parus sought to impermissibly incorporate its antedating arguments into its briefs from other documents.

Judge O'Malley recognized the narrow nature of the *Aqua Products* decision and the limited precedential value of its "cogitations," including the statement Parus seizes upon. 872 F.3d at 1328-29. A subsequent decision from this Court clarified that *Aqua Products* does not—contrary to Parus—impose on the Board an obligation to independently identify and consider arguments and evidence the parties did not properly advance.

Specifically, in *Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, 28 F.4th 1371 (Fed. Cir. 2022), this Court addressed under what circumstances the Board should advance—against a proposed substitute claim—a ground of unpatentability the petitioner did not identify in its opposition to a motion to amend. The *Hunting Titan* petitioner, citing *Aqua Products*, argued that the Board had an obligation to identify ***any*** ground of unpatentability the "prior art of record" supported, and that the Board's failure to advance a particular ground the record allegedly supported was legal error. *Id.* at 1380-81. This Court disagreed, explaining that *Aqua Products* did not "establish[] that the Board maintains an affirmative duty, without limitation or exception, to sua sponte raise patentability challenges to a proposed substitute claim." *Id.* at 1381. Although the Board ***could*** raise any ground of unpatentability the record supported, it was not obligated to do so. *Id.* The Court found no legal error—*i.e.*, no APA violation—in the Board's

decision to limit its *sua sponte* advancement of an unpatentability ground to grounds that are both "readily identifiable and persuasive." *Id.* at 1381-82.

*Hunting Titan* confirms that the APA does not ***obligate*** the Board to search the record for all possible arguments, even those that are not "readily identifiable and persuasive." *Hunting Titan* thus forecloses Parus's reading of *Aqua Products* as interpreting the APA to impose an unfettered obligation on the Board to issue final decisions that analyze all exhibits filed by the parties, including exhibits not tied to any argument properly presented in the parties' briefing.

Parus's reading of *Aqua Products*, and its understanding of the APA, are also inconsistent with the Board's role as an adjudicator of the parties' arguments. In creating *inter partes* review proceedings, "rather than create (another) agency-led, inquisitorial process for reconsidering patents, Congress opted for ***a party-directed, adversarial process***." *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018). "[T]he Board must base its decision on arguments that were ***advanced by a party***." *In re Magnum Oil Tools Int'l., Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016). Here, the Board reasonably found that Parus did not properly advance any antedating arguments because it impermissibly sought to incorporate those arguments into its briefs from declarations and claim charts. Once the Board made that determination—which Parus does not challenge on appeal—the Board had no obligation to assess Parus's antedating exhibits to determine whether something in

them supported an antedating theory that Parus could have (but did not) explain in its briefing.

**2. The Board Did Not Misplace the Parties' Respective Burdens.**

The Board allocated Parus a burden of production on antedating evidence (Appx13)—a burden Parus does not dispute that it bore—while allocating an unshifting burden of persuasion to Appellees. Appx12. Parus asserts that by declining to consider evidence that was not cited and/or explained in Parus's briefing, the Board imposed an obligation on Parus that was not necessary for satisfying its burden of production, and thereby "shift[ed] the burden of persuasion to Parus." Br. at 30. Parus is wrong.

As discussed *infra* pp. 44-47, the Board's rules obligated Parus to explain the significance of its evidence in its briefs via arguments that were not incorporated by reference from other documents. The Board found that Parus failed to comply with this basic procedural requirement (Appx16, Appx21-25), a finding Parus does not contest on appeal. The Board then found that Parus failed to meet its burden of production because it failed to properly introduce its alleged antedating evidence into the proceeding in compliance with the Board's rules. *See, e.g.*, Appx19 ("Patent Owner must introduce evidence"), Appx21, n.5 (Appellees need not disprove evidence Parus did not "introduce[]…properly"), Appx24 (Parus did not meet its "burden to introduce evidence").

Parus acknowledges that, to meet its burden of production, it needed to comply with the Board's rules governing the introduction of evidence into the record. Br. at 36-37. However, as it did below, Parus fatally ignores the Board's rules requiring that Parus explain, ***in its briefs***, the significance of any evidence it wanted considered. *Infra* pp. 44-47. Once the Board correctly determined that Parus did not properly introduce its allegedly antedating evidence into the trial, the Board's determination that Parus's response "does not meet [Parus's] burden to introduce evidence" necessarily followed. Appx24; *see also* Appx21 n.5.

Parus argues that even if the Board properly found Parus failed to cite and/or explain the significance of its allegedly antedating evidence in its briefing, Parus still met its burden of production simply by filing exhibits with the Board and putting them on Parus's exhibit list. Br. at 36 ("Once that evidence was produced, Parus' burden of production was discharged…"). No case Parus cites stands for the proposition that a party satisfies its burden of production by simply dumping exhibits, without explanation, onto the tribunal's lap.

*St. Mary's Honor Center v. Hicks* (Br. at 29-32) explained that to rebut a presumption that an employment action was discriminatory, "the defendant ***must clearly set forth***, through the introduction of admissible evidence, reasons for its actions which, ***if believed by the trier of fact***, would support a finding that unlawful discrimination was not the cause of the employment action." *509 U.S. 502, 507*

*(1993) (cleaned up)*. The *St. Mary's* defendant introduced "evidence of nondiscriminatory reasons" in a three-day district court bench trial, *id.* at 503, on a record including pleadings, witness testimony, and documentary evidence. *Hicks v. St. Mary's Honor Ctr.*, 756 F. Supp. 1244, 1245-46 (E.D. Mo. 1991). The *St. Mary's* defendant met its burden of production by ***properly presenting*** that evidence to the trial court: by complying with a trial order, rules of procedure, rules of evidence, and by explaining the evidence's significance through argument.

Parus's briefs did ***not*** "clearly set forth" facts that, "if believed by the trier of fact," provided a reason why Kovatch was not prior art. Any such showing was "set forth" only in arguments Parus impermissibly attempted to incorporate by reference into its briefs from declaration and claim chart exhibits.[9] Once the Board disregarded, as procedurally improper, Parus's showing of "reasons" why Kovatch was allegedly not prior art, the Board correctly found that Parus failed to satisfy its burden of production and thus Appellees needed to do nothing further to establish Kovatch as prior art.

---

[9] Parus mischaracterizes these arguments as "evidence." Br. at 15, 25. Claim charts explaining the significance of evidence for allegedly meeting claim terms are argument. *Infra* pp. 47-51. So too are such explanations presented in a declaration.

Nothing in this Court's case law is contrary to *St. Mary's* description of the burden of production. This Court's statement in *Dynamic Drinkware* that the patent owner met its burden of production when it "produced evidence," 800 F.3d at 1380, related to evidence "produced" by being cited in briefing explaining the evidence's significance. *Dynamic Drinkware LLC v. Nat'l. Graphics, Inc.*, IPR2013-00131, 2014 WL 4628897, *4-12 (PTAB Sept. 12, 2014) (discussing arguments and evidence in detail). Nothing in *Dynamic Drinkware* suggests patent owners satisfy their burden of production by dumping exhibits onto the Board without explaining their significance in briefing as the Board's rules require.

Likewise, in *Mahurkar v. C.R. Bard, Inc.* (Br. at 28-29) the patentee met its burden of production when it "offered evidence" in a jury trial not by simply filing the evidence with the trial court, but by explaining to the jury the relevance of the evidence to the antedating issue. 79 F.3d 1572, 1576-79 (Fed. Cir. 1996).

Consistent with *St. Mary's*, this Court said in *Technology Licensing Corp. v. Videotek, Inc.* (Br. at 29) that the burden of production is met by "producing additional evidence and presenting persuasive argument." 545 F.3d 1316, 1327 (Fed. Cir. 2008). Parus says the reference to "persuasive argument" referred to one way the burden of production can be met, but did not impose an obligation on patentees to present arguments explaining the significance of their relied-upon evidence. Br. at 29. But the Court was clear that the burden of production required

the patentee "to show not only the existence" of antedating evidence "but ***why***" that evidence supports its antedating claim. *Tech. Licensing*, 545 F.3d at 1327. To meet a burden of production, this Court's precedent plainly requires some explanation as to the significance of a party's evidence, which is in accord with *St. Mary's*.

Contrary to Parus's assertions, the need for a patentee to explain why its filed exhibits demonstrate earlier conception and reduction to practice has complete "support in the controlling case law." Br. at 29-30. Even if the Board needed to accept as true any explanation Parus provided for why Kovatch was not prior art in determining whether the burden of production was met, the Board had no obligation to search for an explanation that Parus could have provided in its briefs but tactically opted[10] to provide only in arguments the Board properly disregarded because they were in other documents.

### 3. The Board Acted Consistently with the AIA and the Board's Regulations Which Required Parus to Explain the Significance of Its Evidence.

Parus argues 37 C.F.R. § 42.6(a)(3) only authorizes the Board to disregard "attorney argument, not record evidence." Br. at 37. But the Board did not disregard evidence under Rule 42.6(a)(3)—the Board disregarded ***arguments*** under that rule.

[10] By offloading its antedating arguments to exhibits, Parus was able to circumvent the Board's word count limit on Parus's briefing. 37 C.F.R. § 42.24.

Appx25 (explaining that because Parus violated the rule by "presenting its arguments and evidence in the form of declarations, rather than by including the arguments in its [briefs]…we disregard [Parus]'s arguments"). An "argument" is "a statement that attempts to persuade by setting forth reasons why something is true or untrue…." Black's Law Dictionary (10th ed. 2014). That is precisely what Parus's declarations and claim charts sought to do—they set forth purported reasons why other exhibits allegedly demonstrated conception, diligence, and reduction to practice that antedated Kovatch. As this Court's *General Access* and *Boston Scientific* decisions discussed *infra* pp. 47-51 make clear, the Board was well within its authority to disregard these arguments masquerading as "evidence."

The consequence of the Board disregarding Parus's antedating arguments that were not made in Parus's briefing was that Parus was left with ***no*** arguments that cited specifically to, or explained the significance of, its alleged antedating evidence. It is for that reason that the Board found that Parus failed to meet its burden of production. Appx16-25. Parus's assertion that the AIA and the Board's regulations only obligate petitioners—not patent owners—to explain their evidence or advance their arguments with specificity (Br. at 34-35) is wrong.

Congress required the Board to promulgate rules dictating how a patent owner must submit evidence relied on "in support" of its patent owner response. 35 U.S.C. § 316(a)(8) (the Board "shall prescribe regulations" for the filing of a response and

"***requiring*** that the patent owner file with such response, through affidavits or declarations, any additional factual evidence and expert opinions on which the patent owner relies in support of the response").

Pursuant to that statutory requirement, the Board promulgated rules requiring that a patent owner response be filed as an "opposition" (37 C.F.R. § 42.120) that must "comply with the content requirements for motions" (*id.* § 42.23(a)). Among those requirements, the response must include "a ***full statement*** of the reasons for the relief requested, including ***a detailed explanation of the significance of the evidence***." *Id.* § 42.22(a)(2); *see also* Consolidated Patent Trial Practice Guide (Nov. 21, 2019) at 66 ("[T]he response should include any…factual evidence sought to be relied upon and ***explain the relevance*** of such evidence."). This rule, the Board has explained, avoids unfairness to petitioners and inefficiencies for the Board. PTAB Rules of Practice, 77 Fed. Reg. 48,612, 48,620 (Aug. 14, 2012) (discussing Rule 42.22(a)(2): "Vague arguments and generic citations to the record are fundamentally unfair to an opponent and do not provide sufficient notice to an opponent and creates inefficiencies for the Board."). And, of course, the Board's rule against incorporating arguments by reference applies to ***all*** "documents"—including those filed by patent owners. 37 C.F.R. § 42.6(a)(3).

Parus's contention that "no [] rule exists" requiring patent owners to explain ***in their briefs*** the relevance of the evidence relied upon (Br. at 35) is wrong.

It is true that Parus was not required to file a patent owner response, let alone submit antedating evidence. Br. at 35.[11] But Parus was on notice that on the "current record" at institution, Appellees had established Kovach as prior art. Appx1236 n.6. Once Parus chose to file a response seeking to antedate Kovatch, Parus was obligated to comply with the Board's rules for such responses. The Board's refusal to consider Parus's evidence is ***not*** "in conflict with the governing statute and related regulations" (Br. at 33), because those regulations ***required*** Parus to provide in its briefs a "detailed explanation of the significance of the evidence" Parus wanted considered, and ***prohibited*** Parus from incorporating that detailed explanation by reference to materials outside its briefs. 37 C.F.R. §§ 42.6(a)(3), 42.22(a)(2).

#### 4. Under This Court's Precedent, the Board Was Not Obligated to Consider Evidence Whose Significance Was Not Explained in the Briefing.

In *General Access Solutions Ltd. v. Sprint Spectrum L.P.*, the patent owner argued a prior art reference was antedated by evidence of earlier conception found in a document called "the Last Mile Business Overview" and an "Appendix A" to an expert declaration that "maps…specific claim elements" to that document. 811

[11] Patentees, however, "would be well advised to introduce evidence on the asserted challenge." *Magnum Oil*, 829 F.3d at 1376 n.1 (cleaned up); *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1008 (Fed. Cir. 2008) (similar).

Fed App'x 654, 658 (Fed. Cir. 2020). The Board found the patent owner's reliance on Appendix A violated Rule 42.6(a)(3) and declined to consider Appendix A's arguments not substantively presented in patent owner's briefing. *Id.* at 657. On appeal, the patent owner (like Parus) argued Appendix A contains "'evidence' rather 'argument'" and thus could not be disregarded under Rule 42.6(a)(3). *Id.* at 658. This Court disagreed. *Id.*

The Court first approvingly explained that the rule against incorporation by reference "minimize[s] the chance that an argument may be overlooked and…eliminate[s] abuses that arise from incorporation and combination." *Id.* at 657 (cleaned up). Absent such a rule, the Board would be forced to "play archeologist with the record and search for arguments that might have [been] made outside of the parties' briefing." *Id.* (cleaned up).

The Court then found that the patent owner response's single paragraph devoted to alleged prior conception "fails to explain with any specificity how [the] inventor [] had conceived of the limitations recited in the various patent claims" and "makes only the general allegation that the claimed limitations can be found" in the "Last Mile Business Overview" exhibit. *Id.* at 658. Given that "the Board was forced to turn to a declaration [ ], and further to delve into a twenty-nine-page claim chart attached as an exhibit [Appendix A]" to " identify [patent owner's] substantive arguments," the Board acted well "within its discretion in excluding the ***arguments***

***made in the claim chart***." *Id.* "Without the benefit of the arguments improperly incorporated from the claim chart" the patent owner was left only with its "broad allegation" of earlier conception and a "conclusory citation to the entirety of the Last Mile Business Overview document." *Id.* The patent owner therefore failed to meet its burden of production on the issue of earlier conception. *Id.*

The parallels between *General Access* and this case are clear. Like the *General Access* patent owner, Parus did not make substantive antedating arguments in its briefs and instead provided them in declarations[12] and claim charts mentioned generally in Parus's briefs. *See, e.g.*, Appx1334 ("The evidence produced in Mr. Kurganov's declaration, along with the accompanying exhibits, ***demonstrate***" [reduction to practice]."), Appx1333 ("As ***shown through*** Alexander Kurganov's testimony…."), Appx1335 ("… Paul Mulka's testimony ***shows*** [diligence]…"). The patent owner response (and sur-reply) contained no analysis mapping the claims to the evidence—Parus offloaded that "analysis" to its declarations and over 100 pages of claim charts. Appx7749-7817; Appx8155-8205; Appx8206-8262.

Parus says *General Access* "does not speak to whether § 42.6(a)(3) gives the Board authority and discretion to ignore evidence of record." Br. at 39. But *General*

[12] The declarations were Ex. 2020 [Appx7749-7817]), Ex. 2059 [Appx8978-9082]), and Ex. 2060 [Appx9083-9086]). *See* Appx1333-1336.

*Access* specifically addressed what evidence is properly "of record" in a manner requiring the Board's consideration. *General Access* affirmed the Board's decision to disregard a claim chart ("Appendix A," 811 Fed. App'x at 656 n.1) because—contrary to Parus's (mis)characterization of claim charts as "evidence" (Br. at 15, 25)—a claim chart includes argument. *Gen. Access*, 811 Fed, App'x at 658. *General Access* also affirmed the Board's decision to disregard the "Last Mile Business Overview" document the appendix mapped to the challenged claims because the briefing included only a "conclusory citation to the entirety" of the document. *Id.* at 658.

*General Access* is directly on point and establishes that the Board here did not abuse its discretion by (1) disregarding antedating arguments contained only in Parus's declaration and claim chart exhibits or (2) refusing to consider exhibits whose significance was only explained in the improperly incorporated-by-reference arguments. 37 C.F.R. § 42.22(a)(2).

*Boston Scientific Neuromodulation Corp. v. Nevro Corp.*, 813 Fed App'x 572 (Fed. Cir. 2020) is similarly on point. There, the patent owner argued that certain products practiced the challenged patent and demonstrated objective indicia of non-obviousness. *Id.* at 582. To make that showing, the patent owner relied on an "Exhibit C" cited in an expert declaration. *Id.* The Board, citing its rule against incorporation by reference, "afford[ed] no weight to [] Exhibit C, ***or the exhibits***

***cited therein***, that are not set forth independently in the Patent Owner Response." *Nevro Corp. v. Boston Sci. Neuromodulation Corp.*, IPR2017-01812, 2019 WL 446307, *24 (PTAB Feb. 1, 2019).

On appeal, just like Parus does now, the patent owner argued the Board abused its discretion in disregarding Exhibit C because it was allegedly "evidence," not argument. *Boston Sci.*, 813 Fed App'x at 582. This Court disagreed, finding that the Board acted within its discretion by disregarding Exhibit C as "clearly an attempt to incorporate arguments by reference" given that it included arguments purporting to map evidence to the challenged claims, and by also disregarding the exhibits cited in Exhibit C because the "only" explanation of those exhibits' significance was in properly disregarded Exhibit C. *Id.* at 582-83. *Boston Scientific* further confirms that, contrary to Parus (Br. at 39), this Court has recognized the Board's authority to disregard alleged evidence "of record" discussed only in arguments that cannot be incorporated by reference in violation of Rule 42.6(a)(3).

While neither *General Access* nor *Boston Scientific* is precedential, they provide persuasive reasoning for affirming the Board's decision here on similar facts.

**5. This Case Implicates the Policy Concerns of *General Access*.**

Parus wrongly suggests that the policy reasons *General Access* identified for prohibiting incorporation by reference are not implicated here. Br. at 40-43.

Parus says the Board need not play archaeologist with the record, and no argument will be overlooked, because Appellees bore the burden to sort through the 1,300 pages of exhibits, 23,000 words of analysis, and 100 pages of claim charts Parus filed, and then present arguments for the Board's consideration as to why this evidence fails to antedate Kovatch. Br. at 41. The requirement in 37 C.F.R. § 42.22(a)—that the party seeking to rely on evidence must explain its significance—was promulgated precisely to prevent burying the opposing party and the Board in a mountain of unexplained evidence in this way. PTAB Rules of Practice, 77 Fed. Reg. at 48,620 (discussing "unfair[ness]" and insufficient "notice ***to an opponent***," and "inefficiencies for the Board"). And Rule 42.6(a)(3)'s prohibition against incorporation by reference was promulgated to address that abuse too. *Id.* at 48,617.

Despite conception and reduction to practice being issues for which the evidence is uniquely under the patent owner's control, Parus complains a patent owner should not have to explain the significance of its evidence in the patent owner response because of its 14,000-word limit. Br. at 42. This assertion fails for two reasons.

First, Parus could have sought leave to exceed the default word-count limit but elected not do so. 37 C.F.R. § 42.24(a)(2). Alternatively, if Parus believes it antedating argument was its strongest—as it appears now believe having jettisoned

its other arguments on appeal—Parus could have simply committed more briefing space to this argument. An appeal is not a vehicle to correct a strategic miscalculation.

Second, Parus's misreading of the burden of production would force the petitioner to "refute" an untold number of unexplained theories about how the evidence ***might*** be alleged to prove conception, reduction to practice, and diligence, and to do so in petitioner's space-limited 5,600-word reply. That would incentivize patent owners to dump exhibits into the record without explaining how the exhibits allegedly support patent owner's antedating contentions, which is contrary not only to the above-discussed Board rules, but to the central purpose of proceedings created to be a "quick and cost effective alternative to litigation." H.R. Rep. 112-98, pt. 1 at 48 (2011).

## B. The Board's Finding that Kurganov-262 Is Prior Art Is Legally Correct and Supported by Substantial Evidence.

### 1. Parus's Statutory Authority Challenge Is Waived and Meritless.

Parus argues the Board exceeded its statutory authority when it determined Kurganov-262 is prior art. Br. at 44-48. Parus waived this argument by not making it at trial below. Additionally, Parus's argument is foreclosed by the Court's recent (and binding) *Arthrex* decision.

***Waiver***. Although Parus advanced a similar argument in its ***preliminary*** response (Appx1171-1172, Appx9301-9302), it dropped that argument after the

Board instituted *inter partes* review by not re-raising it in its patent owner response or sur-reply. *See* Appx1296-1356, Appx1428-1461, Appx9437-9499, Appx9571-9604. By raising the argument in the preliminary phase but not re-raising it during trial, Parus waived it. *In re NuVasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016).

***Arthrex***. If the Court addresses Parus's argument, it should reject it just as a prior panel rejected the same argument in the recent *Arthrex* decision. While 35 U.S.C. § 311(b) limits "the grounds on which an IPR petition may be based" to those under §§ 102 and/or 103, it does not limit "the ***issues*** that the Board may consider to resolve those grounds." *Arthrex*, 35 F.4th at 1344-45. When patentees, like Arthrex or Parus, argue references are not prior art because the challenged claims are entitled to the filing date of an earlier-filed application, the Board must consider the ***issue*** of whether that earlier-filed application discloses the later-claimed invention in the manner required by § 112, including its written description requirement. *Id.*; *see also Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,* 948 F.3d 1342, 1355 (Fed. Cir. 2020) (instructing the PTAB to perform §§102/103 analysis in light of §112 analysis).

The Board found the claims unpatentable under § 103—not under § 112. Appx64-65, Appx93-94. "[A] patent's claims are not entitled to an earlier priority date merely because the patentee claims priority." *In re NTP, Inc.*, 654 F.3d 1268, 1276 (Fed. Cir. 2011). The Board was thus obligated to "undertake a priority

analysis" (*id.* at 1277) that involved determining whether Parus's earlier-filed application provided written description support for the challenged claims. The written description analysis was a necessary predicate to adjudicating the § 103 grounds that § 311(b) unquestionably authorizes the Board to perform. *Arthrex*, 35 F.4th at 1344-45.

Absent en banc reconsideration or Supreme Court intervention, the panel considering Parus's challenge to the Board's statutory authority "is bound by the determination[]" in *Arthrex*. *Deckers Corp. v. United States*, 752 F.3d 949, 959 (Fed. Cir. 2014). Even if *Arthrex* was not dispositive, Parus's arguments fail.

First, Parus's contention that "the Patent Office has *already* and *necessarily* considered the written description question" (Br. at 45 (emphasis original)) ignores that—even with continuation applications—there is no presumption that the examiner considered priority (or written description). *NTP*, 654 F.3d at 1277-78; *Nat. Alts. Int'l., Inc. v. Iancu*, 904 F.3d 1375, 1380 (Fed. Cir. 2018). Patentees must demonstrate that the examiner "actually considered" priority or written description, *NTP*, 654 F.3d at 1278, and Parus made no such showing.

Second, Parus's argument that the inclusion of § 112 unpatentability grounds in the AIA's post-grant review proceedings suggests "Congress expressly denied that power to the Board" in *inter partes* review proceedings is a red herring. Br. at

45. There is no dispute that the Board cannot—and did not—find claims unpatentable under § 112.

Third, it is Parus's interpretation of the AIA that "threatens to rip a significant hole in the statutory scheme" (Br. at 48), because if the Board cannot examine patents' priority claims, patentees could avoid years of prior art simply by listing an earlier filing date even where, as here, the claims are unsupported in the earlier-filed application. Nothing in the legislative history suggests that when Congress replaced *inter partes* reexamination with *inter partes* review it intended to divest the Board of its power—confirmed in *NTP*—to conduct priority analyses when needed to make §§ 102/103 determinations.

### 2. There Are No Legal Errors in, and Substantial Evidence Supports, the Board's Written Description Finding.

Written description is a question of fact reviewed for substantial evidence. *Arthrex*, 35 F.4th at 1343. Substantial evidence in the form of the written description's plain language and expert testimony interpreting that language supports the Board's findings. *Infra* pp. 57-62. Parus essentially concedes as much by attempting to re-frame the written description issue as one of claim construction, but that argument is waived and meritless. *Infra* pp. 62-65.

### a. The Board's Finding That the Priority Application Did Not Adequately Describe the Claimed Invention Is Supported by Substantial Evidence.

The question below was whether the specification of Parus's priority application[13] (the '996 Application) reasonably conveyed to POSAs that the inventors possessed a voice-browser system "configured to periodically search via [] one or more networks to identify new web sites and to add the new web sites to the plurality of web sites" from which the system retrieves information. Appx136 (claim 1); *see also* Appx114 (claim 9 with similar language).

The '996 Application discloses two primary embodiments—one in which websites are accessed using voice commands, and another in which household devices are controlled using voice commands. Appx105 (4:30-34), Appx112 (17:36-46). The specification only mentions detecting something "new" in describing that the ***second*** embodiment can "detect whether new devices have been added to the system." Appx113 (19:10-28). The disputed question is whether the Board's finding that the specification did not convey to POSAs that the inventors possessed an invention in which the ***first*** embodiment's web browser system

[13] Consistent with the Board's decisions and the parties briefing below, Appellees cite to the '431 patent's identical specification herein. Appx54. n.11; *see also* Appx83 n.9 (similar citation convention for IPR2020-00847 and '084 patent).

periodically searched the Internet to identify new websites and add them to the system's listing of websites was a reasonable assessment of the evidence. *Henny Penny Corp. v. Frymaster, LLC*, 938 F.3d 1324, 1330 (Fed. Cir. 2019) ("A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding."). It plainly was.

Parus has tellingly abandoned many arguments it advanced below after the Board soundly rejected them. For example, Parus argued that because the first embodiment dynamically adapts to changes in websites (Appx112 (17:26-28)), it must have the ability to identify new websites. Appx1348-1351; Appx9474-9477. The Board rejected that argument because, as Appellees' expert explained, the specification only describes "adapting to changes within ***already known websites***, not adapting to changes on the Web involving unknown websites." Appx57 (citing, *e.g.*, Appx7179-7180 (¶27)). Parus does not challenge that finding on appeal.

Parus also argued that the first embodiment's web searching system "would include" web crawling functionality that permits new websites to be identified. Appx1348-1349; Appx9474-9475. The Board rejected this argument as lacking evidentiary support and as legally irrelevant because—at best—it established that adding web crawling functionality to the first embodiment would have been obvious, which "is not sufficient to support an argument that the [specification] provides written description support." Appx61; Appx90. The Board likewise rejected as

legally irrelevant Parus's attempt to demonstrate written description through its reduction-to-practice argument. Appx61; Appx90. Parus does not challenge the Board's rejection of those arguments.

Having abandoned most of its arguments advanced before the Board, Parus now focuses principally on the following passage in column 17 of the specification:

> In the [second] embodiment, the devices 500 appear as "web sites" connected to the network 502. This allows a network interface system, such as a device browsing server 506, a database 508, and a user interface system, such as a media server 510, to operate similar to the web browsing server 102, database 100 and media server 106 described in the first preferred embodiment above.

Appx112 (17:50-57). According to Parus, POSAs would have understood this passage to describe the two embodiments as having interchangeable functionality such that the first embodiment somehow included periodically searching for new websites. Br. at 49-51. The Board disagreed.

As the Board explained, the plain language of column 17 does not say the second embodiment's "devices 500" ***are*** "web sites"—it says they "***appear***" to the computer system as websites. Appx59. Quoting Appellees' expert, the Board explained that POSAs "would have understood [the passage] to teach that the devices are, of course, not actually websites, but only '***appear***' to the device browsing server as URLs." Appx59 (quoting Appx1753-1754 (¶220)). The Board thus rejected Parus's argument that column 17's disclosure "shows that the devices in the second embodiment ***may in fact be web sites***, and operate similarly to the first

embodiment." Appx58. The specification's plain language and the testimony of Appellees' expert amply support the Board's conclusion.

On appeal, Parus alleges that even if the quoted passage's "web sites" are not actual websites, the passage nonetheless highlights the two embodiments' interchangeability, and it was unreasonable for the Board to conclude otherwise. Br. at 51. Parus ignores the Board's further explanation why—apart from the "appear as 'web sites'" issue—POSAs would not have understood the two embodiments to be interchangeable in the manner Parus alleged.

As the Board explained, when the second embodiment uses its "polling" or "pinging" technique with networked household devices, a device can be identified as "new" if it produces an unexpected response. Appx59; Appx89. The first embodiment's polling does not work that way; it only polls already-listed websites and re-ranks them based on their responses and speed. Appx59; Appx89. As the Board found, "Patent Owner has not adequately explained how" the second embodiment's polling "could be applied to identify new web sites." Appx59-60; Appx89.

Parus also asserted POSAs knew "polling" was a technique by which new websites could be identified, citing only its expert. Appx1350-1352 (citing Appx9063-9065 (¶¶153-155)). The Board was unpersuaded and "afford[ed] minimal weight" to Parus's expert testimony because it "provide[d] very little detail

beyond" what Parus's attorneys argued in the Response. Appx60; Appx89-90. Indeed, on this issue Parus's expert offered only a conclusory assertion that parroted Parus's response near-verbatim. *Compare* Appx1351-1352 *with* Appx9065 (¶155)). The Board's decision not to credit Parus's conclusory expert testimony—largely the same testimony Parus highlights on appeal (Br. at 49-50)[14]—was eminently reasonable. *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) ("Conclusory expert testimony does not qualify as substantial evidence.").

The Board did not merely reject Parus's argument, it credited Appellees' counterarguments that neither embodiment's "polling" demonstrated possession of a system that periodically searches to identify and add new websites. The Board agreed the specification ***distinguished*** "polling" of websites from "searching" for websites, and that the challenged patents included different dependent claims directed to these different concepts. Appx60 (citing Appx113-114 (claim 8)); Appx90. The Board also credited Appellees' expert's explanation that the only

---

[14] Parus cites several paragraphs of expert testimony in Appx16756-16759. Br. at 49. Of them, paragraphs 153-155 are the ones the Board expressly found unpersuasive. The remaining paragraphs—not emphasized in Parus's briefing to the Board—are equally conclusory and only parrot verbatim the responses' arguments. Appx1348-1352; Appx9474-9477.

"polling" of websites the specification says the first embodiment performs is polling ***known websites*** already in the system's database to determine whether they return a complete response, *e.g.*, to update the ranking of known websites. Appx7180-7182 (¶¶28-29) (cited by Board at Appx57). The Board agreed with Appellees that POSAs would not have understood the first embodiment's "polling" to search for new websites. Appx60; Appx90.

The Board's thorough written description analysis rejected Parus's conclusory (and often legally irrelevant) arguments and evidence and credited Appellees' counterarguments and evidence. The Board's finding that the specification "fail[s] to describe with adequate precision how the computing device is configured to periodically search the network(s) to identify new web sites and add such new web sites to the plurality of web sites that are accessed" (Appx58, Appx87) was supported by substantial evidence because "a reasonable mind might accept the evidence as adequate to support the finding." *Henny Penny*, 938 F.3d at 1330.

**b. Parus's Belated Attempt to Manufacture a Claim Construction Dispute Fails.**

Parus argues the Board adopted an "implausible and counter-intuitive meaning" for "web site" and impermissibly failed to provide an explicit construction. Br. at 52-54. These arguments are forfeited and meritless.

Parus never argued below that "web site" needed to be construed for the Board to resolve the parties' written description dispute. Appx9-10; Appx77-78;

Appx1320; Appx9461. Instead, Parus characterized the dispute as a classic fact question: would POSAs have understood the specification's teaching in column 17 that "devices 500 appear as 'web sites'" to provide written description support for the relevant claims. Appx1350; Appx9476; Br. at 53 (confirming same). Where, as here, a party "chose not to characterize its dispute…as a claim construction issue before the Board," that party forfeits any ability to reframe the dispute on appeal as one regarding claim construction. *Apple Inc. v. MPH Techs. Oy*, 2022 WL 215129, *4 (Fed. Cir. Jan. 25, 2022); *Elbit Sys. of Am., LLC v. Thales Visionx, Inc.*, 881 F.3d 1354, 1357 n.3 (Fed. Cir. 2018).

If considered, Parus's argument fails. Parus argues "web sites" should have been construed to include "devices that appear as web sites." Br. at 53. The Board implicitly (and correctly) rejected Parus's proposed construction when it afforded "web site" its plain meaning, *i.e.*, an actual website. As the Board explained, column 17's teaching that "devices 500 appear as 'web sites'" places quotation marks around "web sites," which "strongly suggests that the devices are not actual web sites—particularly considering the [specification's] numerous listings of actual web sites without such quotation marks." Appx59 (citing Appx106 (6:19, 6:63), Appx110 (13:33-34, 14:37-38) Appx112 (18:37-40)). With that finding, the Board both confirmed it was affording "web site" its plain meaning—an actual website like those listed in the specification (*e.g.*, www.cnn.com)—and found that column 17's

household devices (lights, sprinklers, etc.) that "appear as 'web sites'" are not actually "web sites" under that plain meaning.

Parus's contention that the Board was obligated to "expressly construe the term 'web sites'" is meritless. Br. at 54. Claim construction "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). The Board's understanding of "web sites" is discernable from its decision such that this Court can "see that the [Board] has done its job." *NuVasive*, 842 F.3d at 1383. By finding devices that merely "appear as 'web sites'" are not "web sites," the Board "engaged in claim construction" because it determined "the scope and boundaries of the subject matter that is patented." *HTC Corp. v. Cellular Commc'ns Equip. LLC*, 701 F. App'x 978, 981 (Fed. Cir. 2017).

*Homeland Housewares*, *LLC v. Whirlpool Corp.* (Br. at 54) only requires the Board to "resolve" the parties' claim scope disputes. 865 F.3d 1372, 1375 (Fed. Cir. 2017). The Board did that by applying its understanding of "web sites" to the '996 Application's specification. Appx58-59; Appx88.

*Alacritech, Inc. v. Intel Corp.* (Br. at 54) is distinguishable because there the Board failed to even acknowledge the parties' dispute. 966 F.3d 1367, 1371 (Fed. Cir. 2020). Here, the Board articulated the parties' competing "web sites" arguments, and explained why it rejected Parus's argument and agreed with Appellees. Appx55-56, Appx58-59; Appx84, Appx88. Unlike in *Alacritech*, the

Board's decision here provides this Court with a clear path to see that the Board did its job.

*In re Lee* (Br. at 54) is similarly distinguishable because it too involved a Board decision that failed to "explain the reasoning by which" the Board came to its findings. 277 F.3d 1338, 1344 (Fed. Cir. 2002).

Finally, even if "web sites" covered the second embodiment's household devices, that embodiment still does not support the challenged claims for two reasons. First, that embodiment lacks other claimed elements, and Parus never argued otherwise. Appx9176 (citing Appx9804-9805 (¶92)); Appx1073 (citing Appx1754-1755 (¶222)). Second, Parus still has provided no explanation how the second embodiment's technique for detecting whether new devices have been added to a home network could be applied to search for new websites on the Internet, let alone where that is described in the specification. *Supra* pp. 60-62.

## CONCLUSION

The Final Written Decisions should be affirmed.

Respectfully submitted,

Date: July 21, 2022

*<u>/s/ Nathan R. Speed</u>*
Nathan R. Speed
Richard F. Giunta
Gregory F. Corbett
Elisabeth H. Hunt
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue

Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Gregory S. Nieberg
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue
New York, NY 10158
Telephone: (212) 697-7890

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

I, Nathan R. Speed, counsel for Appellee, certify that the foregoing brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(b) and Fed. Cir. Rule 32(a). Specifically, this brief contains 13,996 words (excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b)) as determined by the word count feature of the word processing program used to create this brief.

I further certify that the foregoing brief complies with the typeface requirements set forth in Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). Specifically, this brief has been prepared using a proportionally spaced typeface using Microsoft Word 2010, in 14-point Times New Roman font.

Date: July 21, 2022

*/s/ Nathan R. Speed*

Nathan R. Speed
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646
nspeed@wolfgreenfield.com

*Counsel for Appellees*

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that a true and correct copy of the foregoing **Corrected Response Brief for Appellee** has been electronically filed with the Clerk of Court using the CM/ECF system, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including principal counsel for Appellant.

Date: July 21, 2022

*/s/ Nathan R. Speed*

Nathan R. Speed
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646
nspeed@wolfgreenfield.com

*Counsel for Appellees*