Nos. 22-1269, 22-1270

# In The
# United States Court of Appeals
# for the Federal Circuit

PARUS HOLDINGS, INC.,

*Appellant,*

v.

GOOGLE LLC, SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., LG ELECTRONICS INC., LG ELECTRONICS USA, INC.,

*Appellees.*

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2020-00846, IPR 2020-00847.

**REPLY BRIEF FOR APPELLANT PARUS HOLDINGS, INC.**

Joel L. Thollander
John B. Campbell
MCKOOL SMITH, P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
(512) 692-8700
*Attorneys for Appellant*

September 9, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................... ii

INTRODUCTION ..................... 1

ARGUMENT IN REPLY ..................... 5

A. The Board Legally Erred When It Chose to Disregard Record Evidence In Determining That Kovatch Was Prior Art. ..................... 5

1. The Board's decision to disregard evidence violated the APA. ..................... 5

2. The Board's decision to disregard evidence reflected a misplacement of the parties' respective burdens. ..................... 10

3. The Board's decision to disregard evidence conflicted with the governing IPR statutory and regulatory provisions. ..................... 14

4. The Board's decision to disregard evidence cannot be justified by application of 37 C.F.R. § 42.6(a)(3). ..................... 17

B. The Board Legally Erred When It Found That the Remaining Challenged Claims Lacked Written Description Support. ..................... 21

1. The Board's written description determinations exceeded its statutory authority. ..................... 21

2. The Board's written description analyses were legally deficient. ..................... 26

CONCLUSION ..................... 28

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apex Inc. v. Raritan Computer, Inc.*,
325 F.3d 1364, 1372 (Fed. Cir. 2003) ....................................................11

*Aqua Prods. v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017) (en banc) ....................................................5

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc) ....................................................26

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
35 F.4th 1328 (Fed. Cir. 2022) ....................................................4, 22, 23, 24

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534 (1986)....................................................22

*Bivings v. U.S. Dep't of Agric.*,
225 F.3d 1331 (Fed. Cir. 2000) ....................................................8

*Bos. Sci. Neuromodulation Corp. v. Nevro Corp.*,
813 F. App'x 572 (Fed. Cir. 2020) (unpublished)....................................................17

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)....................................................24

*Cooper v. Goldfarb*,
154 F.3d 1321 (Fed. Cir. 1998) ....................................................13

*Dir. v. Greenwich Collieries*,
512 U.S. 267 (1994)....................................................13

*Dynamic Drinkware LLC v. Nat'l Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) ....................................................12

*FanDuel, Inc. v. Interactive Games LLC*,
966 F.3d 1334 (Fed. Cir. 2020) ....................................................5

*Federal Election Comm'n v. Akins*,
524 U.S. 11 (1998)....................................................8, 17

*General Access Sols., Ltd. v. Sprint Spectrum L.P.*,
811 F. App'x 654 (Fed. Cir. 2020) (unpublished) .......... 17

*Google LLC v. Parus Holdings, Inc.*,
No. IPR2022-00279, Paper 7 (P.T.A.B. July 1, 2022) .......... 19

*Hambsch v. United States*,
848 F.2d 1228 (Fed. Cir. 1988) .......... 22

*Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*,
28 F.4th 1371 (Fed. Cir. 2022) .......... 8, 9

*In re Lee*,
277 F.3d 1338 (Fed. Cir. 2002) .......... 5, 8, 16, 17

*In re Magnum Oil Tools Int'l Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) .......... 5, 14

*In re NuVasive*,
842 F.3d 1376 (Fed. Cir. 2016) .......... 22

*Mahurkar v. C.R. Bard, Inc.*,
79 F.3d (Fed. Cir. 1996) .......... 13

*Rovalma, S.A. v. BohlerEdelstahl GmbH & Co. KG*,
856 F.3d 1019 (Fed. Cir. 2017) .......... 6, 7

*SAP America, Inc. v. Lakshmi Arunachalam*,
No. IPR2014-00414, 2015 Pat. App. LEXIS 12541
(P.T.A.B. Aug. 17, 2015) .......... 24

*SAS Institute Inc. v. Iancu*,
138 S. Ct. 1348 (2018) .......... 10, 14

*Secure Axcess, LLC v. PNC Bank Nat'l Ass'n*,
859 F.3d 998 (Fed. Cir. 2017) .......... 8

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
No. IPR2017-00275, 2018 Pat. App. LEXIS 7285
(P.T.A.B. May 2, 2018) .......... 23

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993) .......... 11, 12

*Technology Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316 (Fed. Cir. 2008) ....................................................................12

**STATUTES**

35 U.S.C. § 112 ..........................................................................................4

35 U.S.C. § 311(b) ...................................................................................24, 26

35 U.S.C. § 316(e) .....................................................................................6, 20

**OTHER AUTHORITIES**

37 C.F.R. § 42.6(a)(3) ..........................................................................passim

37 C.F.R. § 42.6(c)..........................................................................................7

37 C.F.R. § 42.22(a)..........................................................................15, 16, 17

37 C.F.R. § 42.23(a)..........................................................................15, 16, 17

37 C.F.R. § 42.24(a)(2) ..................................................................................20

37 C.F.R. § 42.120(a)........................................................................15, 16, 17

37 C.F.R. § 41.121(d)(2)..................................................................................9

Black's Law Dictionary (10th ed. 2014) ......................................................11

## INTRODUCTION

1. To meet its burden of production, Parus submitted substantial antedating evidence—some 41 exhibits, characterized by Google as a "mountain" of evidence (Google Response Brief ("G.Br.") at 2). These included declarations, emails, source-code files, and press releases. Appx1301-1302 (describing exhibits 2020-2060). Regarding these exhibits, Parus explained that, "[a]s shown through [inventor] Kurganov's testimony, which is corroborated by the time-stamped source emails, documents, and the testimony of [employee] Mulka and [expert] Occhiogrosso, the inventors conceived of the subject matter no later than July 12, 1999"—antedating the Kovatch reference. Appx1333-1334. Parus also explained that the "evidence produced in [inventor] Kurganov's declaration, along with the accompanying exhibits, demonstrate that the enhancements to [Parus's] Webley Assistant reduced the '431 and '084 inventions to practice in a prototype no later than December 31, 1999, five days before Kovatch's earliest filing date of January 4, 2000." Appx1334. Parus further explained how, in the alternative, the submitted exhibits demonstrated diligence and reduction to practice no later than January 7, 2000. Appx1334-1336.

With the evidence and explanations in hand, Google took further discovery, including depositions of Kurganov, Mulka, and Occhiogrosso. Parus Brief ("Br.") at 15-16. Following discovery, Google set out to meet its burden of persuasion on the antedating issue. On the merits, Google offered no dispute that the exhibits proved

prior conception—thus settling that point.[1] Google offered four arguments contesting reduction to practice for the Board to resolve, asserting that: (1) the source-code exhibits provided no corroboration (Appx1398-1400); (2) the evidence did not reflect that elements recited claims 1, 9, and 14 of the '431 patent were reduced to practice (Appx1401-1404); (3) the evidence did not show the prototype was operational (Appx1405-1406); and (4) the reduction-to-practice dates were uncorroborated (Appx1407-1408). Parus answered these arguments (Appx1435-1446), and they were joined at the hearing (Appx1527-1539, Appx1558-1573).

Notwithstanding the antedating evidence in the record and the arguments on the merits fully joined, the Board elected not to consider any of this on the ground that arguments may not be incorporated by reference and, according to the Board, if the arguments in Parus's exhibits were ignored, those remaining in Parus's brief were insufficiently persuasive to meet its burden of production. The Board cited only one rule as supporting this determination: 37 C.F.R. § 42.6(a)(3). Appx25.

In its appeal brief, Parus demonstrated that the Board's decision to ignore the antedating evidence runs counter to the APA, the AIA, and the respective burdens on the parties, and finds no support in the rule cited by the Board. Br. at 24-44. In

[1] Google suggests that determining prior conception would have required substantial work from the Board. G.Br. at 12-14. Not true. Parus submitted its evidence and explained that it demonstrated prior conception; Google reviewed that evidence, took discovery, and then offered no challenge as to prior conception. Appx1398-1408; Br. at 16. That issue was thus settled.

response, Google focuses on different administrative rules which, Google argues, required Parus to explain the significance of the evidence it submitted to meet its burden of production. G.Br. at 46. But Parus *did* cite to and explain the significance of the evidence it submitted. Appx1301-1302, Appx1333-1336. In any event, review of administrative decisions must be made on the grounds relied on by the agency—so Google's suggestion that other grounds might support the Board's decision should not prevent reversal and remand in these appeals. Further, none of the other rules Google advances speaks to the quantum of argument required to meet a burden of production. And it makes little sense to read them, as Google would, to require the same quantum of argument to meet a burden of production as to meet a burden of persuasion. Indeed, Google's response confirms that, under its proposed approach as well as the one taken by the Board, the burden of persuasion on the antedating issue is placed squarely on the patent owner. That violates the law.

Significantly, Google offers no challenge to Parus's showing that the burden of production language used in some of this Court's decisions—and which led to the Board's error here—is inconsistent with the language used by the Supreme Court, and was borrowed from another context in which the inventor bore the burden of persuasion on antedating questions. Br. at 29-33. Google's silence on these points confirms that the Court should take this opportunity to bring its own approach to the burden of production in line with the approach approved by the Supreme Court.

The proceedings should be remanded so the Board can consider the fully joined arguments on the antedating evidence in the IPR record.

2. On the 35 U.S.C. § 112, ¶ 1 issue, Google argues waiver, and that the recent decision in *Arthrex* settled the question that Parus raises here. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022). But Parus did not waive the issue, and in any event, the issue relates to the scope of the Board's authority—its jurisdiction—and jurisdictional issues are not subject to waiver. Further, *Arthrex* holds that written description may be considered in an IPR when necessary to resolve a properly pleaded obviousness ground. *Arthrex* should not be read to cover the situation here, where the obviousness allegation is indisputably an unessential tack-on, and reading the petition through the lens of the well-pleaded complaint rule makes clear that the essential theory of invalidity asserted rests on § 112, ¶ 1.

On the merits of the Board's written description analysis, Google argues that the Board *in fact engaged* in claim construction (G.Br. at 64)—notwithstanding the Board's assertion that it did "not find it necessary to provide express claim constructions for any terms" (Appx10). Google argues that the Board "afford[ed] 'web site' its plain meaning—an actual website …." G.Br. at 63. But that is not right. Actual websites as described in the specification may "appear as 'web sites'"—yet the Board concluded otherwise. Appx58-59; Br. at 52-54.

At the very least, remand is appropriate on this issue as well.

## ARGUMENT IN REPLY

### A. The Board Legally Erred When It Chose to Disregard Record Evidence In Determining That Kovatch Was Prior Art.

#### 1. The Board's decision to disregard evidence violated the APA.

In "every case, it remains the Board's essential function to make factual findings based on its view of the record." *FanDuel, Inc. v. Interactive Games LLC*, 966 F.3d 1334 (Fed. Cir. 2020). And "final substantive" findings "must be based" on its view of "*the entirety* of the record." *Aqua Prods. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) (en banc) (O'Malley, J. op.). Under the APA, the Board "must take account of all the evidence of record, including that which detracts from the conclusion [it] ultimately reaches." *Id.*; *In re Magnum Oil Tools Int'l Ltd.*, 829 F.3d 1364, 1378 (Fed. Cir. 2016); *In re Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002). This "[b]asic principle[] of administrative law," *Aqua Prods.*, 872 F.3d at 1325, was violated in this proceeding when the Board refused to consider the record evidence bearing on the antedating issue before it—which indisputably detracted from the conclusion it reached. Parus demonstrated all this in its brief. Br. at 24-26.

Google concedes in response that the APA requires the Board to "permit the patent owner 'to submit rebuttal evidence'" for consideration. G.Br. at 34 (citing *Rovalma, S.A. v. BohlerEdelstahl GmbH & Co. KG*, 856 F.3d 1019, 1029 (Fed. Cir. 2017)). And, Google posits, "the Board considered Parus's submissions." G.Br. at 35. But that is incorrect. The Board declined to consider Parus's antedating evidence,

submitted under a burden of production. Appx25; Br. at 24-33. Google further concedes that the APA "obligate[s]" the Board "to consider arguments properly raised by the parties and provide a reasoned explanation for why those arguments were or were not persuasive." G.Br. at 35 (emphases omitted). By its terms, this concession relates to the burden of *persuasion*—which remained on Google at all times. Br. at 27-28; 35 U.S.C. § 316(e). Under that burden, Google raised specific arguments addressing the antedating evidence, and Parus answered those arguments. Br. at 14-16. But the Board declined to consider those properly raised arguments as well. Appx25. As Google's cited *Rovalma* case holds, when it cannot be "conclusively determine[d]" that "the Board's actions complied with the APA's procedural requirements"—a fair characterization, at the minimum, of the situation here—then "a remand is warranted." 856 F.3d at 1029-30.

Google further points out that the Board has "broad discretion to regulate the presentation of evidence." G.Br. at 35 (citing *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1604, 1081 (Fed. Cir. 2015)). But in *Belden* the Court affirmed a Board decision to deny a motion to exclude and *consider* evidence. 805 F.3d at 1082. As the Court noted there, "[i]f there are deficiencies in Board rules and practices, none has been established as relevant to this case." *Id.* at 1080. Here, a deficiency has been established as relevant: the Board elected to *ignore* evidence, submitted under a burden of production, based on a rule addressing "[g]eneral format requirements"

and providing only that "[a]rguments must not be incorporated by reference from one document into another document." 37 C.F.R. § 42.6(a)(3). Parus and Google both agree that the law delineates between arguments and evidence. *Compare* Br. at 37 *with* G.Br. at 44-45. Rule 42.6(a)(3) addresses arguments; it says nothing about evidence, nor about any standard necessary to meet a burden of production. Br. at 37-38. And Board decisions cannot be affirmed based on "implicit" assumptions, arguments, or findings. *See Rovalma*, 856 F.3d at 1029.

Google next argues that the APA is not offended, and "Parus failed to meet its burden of production," because "Parus's evidence was not introduced properly." G.Br. at 36. That is, Google argues that "(i) Parus failed to cite the evidence 'with specificity,'" and "(ii) Parus never explained the evidence's significance in its briefing." G.Br. at 36. This misses from the start because the Board's rule for introducing exhibits is found at 37 C.F.R. § 42.6(c), and it simply requires that "[e]ach exhibit must be filed with the first document in which it is cited." There is no dispute that Parus satisfied this rule. Further, the antedating exhibits were specifically cited in the document with which they were filed, and that document explained their significance—they demonstrated prior conception, reduction to practice, and diligence. Appx1301-1302, Appx1333-1336; Br. at 14-15. More fundamentally, the rule relied upon by the Board to disregard this evidence says

nothing about meeting a burden of production and nothing about introducing, citing, or explaining evidence. Appx25 (citing Rule 42.6(a)(3)); Br. at 36-44.

Google offers an alternative theory that, it argues, might support the Board's decision to disregard evidence. G.Br. at 35-36. That is addressed below. *Infra* at 14-17. But for purposes of the APA, the critical point is that "review of an administrative decision must be made on the grounds relied on by the agency." *Lee*, 277 F.3d at 1345-46. If those grounds "are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Id.* (citing *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *see also Federal Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998); *Bivings v. U.S. Dep't of Agric.*, 225 F.3d 1331, 1335 (Fed. Cir. 2000); *Secure Axcess, LLC v. PNC Bank Nat'l Ass'n*, 859 F.3d 998, 1013 (Fed. Cir. 2017). As it has done before, this Court should thus "decline to consider alternative grounds that might support the Board's decision." *Lee*, 277 F.3d at 1346.

Google also argues that this Court's decision in *Hunting Titan* "clarified" that the Board has no "obligation to independently identify and consider arguments and evidence the parties did not properly advance." G.Br. at 38-39; *see Hunting Titan, Inc. v. DynaEnergetics Europe GmbH*, 28 F.4th 1371 (Fed. Cir. 2022). That is a non sequitur: Parus does not argue that the Board is obligated to identify and consider arguments and evidence not advanced by the parties. Quite the opposite. Antedating

evidence was submitted by Parus (pursuant to its burden of production), and arguments on that evidence were advanced by both parties—including, critically, by Google (pursuant to its burden of persuasion). Parus argues that the Board should have considered the issues in dispute after Google offered its arguments framing the disputes relating to the antedating evidence produced by Parus. That is, the Board should have resolved the question relating to the persuasiveness of the antedating argument and evidence that was before it: whether Google had met its burden to show that this evidence *did not* antedate Kovatch. Br. at 27-33.

*Hunting Titan* does not help Google in any event. The Court held there—as Google frames the decision—that, on a motion to amend, "[a]lthough the Board ***could*** raise any ground of unpatentability the record supported, it was not obligated to do so." G.Br. at 38. The Court found no error "in the Board's decision to limit its *sua sponte* advancement of an unpatentability ground to grounds that are both 'readily identifiable and persuasive.'" G.Br. at 38-39; *Hunting Titan*, 28 F.4th at 1381-82. On a motion to amend, the petitioner "bears the burden of persuasion to show, by a preponderance of the evidence, that any proposed substitute claims are unpatentable." 37 C.F.R. § 41.121(d)(2). *Hunting Titan* thus confirms that, in certain circumstances relating to the prosecution of new claims during an IPR, the Board may consider evidence and arguments that favor the petitioner, but that were not advanced by the petitioner—notwithstanding the petitioner's burden of persuasion.

That says nothing to suggest that the Board may *disregard* evidence that favors the patent owner, and that was submitted by the patent owner—who bears, in the context of this antedating issue, only the burden of production.

Finally, Google notes that in creating IPR proceedings, "Congress opted for ***a party-directed, adversarial process***." G.Br. at 39 (citing *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018)). True: a process in which "the petitioner's contentions, not the Director's discretion, define the scope of the litigation all the way from institution through to conclusion." *SAS*, 138 S. Ct. at 1357. The petitioner offered contentions regarding the merits of the antedating evidence submitted in this case. Appx1397-1407; Br. at 15-16. The Board declined to resolve them. Appx25. Google also points out that the "Board must base its decision on arguments that were ***advanced by a party***." G.Br. at 39 (citing *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016)). Again, true enough. And Parus merely asks that the Board base its decision on the arguments advanced by the parties—including those advanced by Google (and contested by Parus) under Google's burden of persuasion. Br. at 40-43. On remand, that is what the Board should do.

**2. The Board's decision to disregard evidence reflected a misplacement of the parties' respective burdens.**

Google's response confirms the misplacement of the parties' burdens. Google first posits that the Board is only "obligated to consider *arguments* properly raised by the parties and provide a reasoned explanation for why those *arguments were or*

*were not persuasive*." G.Br. at 34-35 (emphases omitted and supplied). Google later confirms that "[a]n 'argument' is 'a statement that attempts to persuade by setting forth reasons why something is true or untrue ….' Black's Law Dictionary (10th ed. 2014)." G.Br. at 45. Further, in applying Rule 42.6(a)(3), "the Board disregarded ***arguments***." G.Br. at 44. And having disregarded Parus's *arguments*, "the Board found that Parus failed to meet its burden of production." G.Br. at 45.

There is thus no dispute that the Board looked for persuasive arguments; disregarded those arguments; and then finding an insufficient quantum of persuasive arguments remaining in Parus's brief, determined that Parus had not met its burden. Thus, by definition—including Google's definition of the word "argument" (G.Br. at 45)—the Board placed the risk of nonpersuasion on Parus. And when the risk of nonpersuasion is placed on a party, that party bears the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003). That happened here: in requiring Parus to offer persuasive argument on every issue and element relating to conception, reduction to practice, and reasonable diligence toward reduction to practice, the Board shifted the burden of persuasion onto Parus. Br. at 30.

Google argues that the Board's approach was consistent with the Supreme Court's approach in *St. Mary's*. G.Br. at 41-42; *see* Br. at 29-33. That is incorrect.

The Board concluded that Parus had not met its burden of production based *solely* on its finding of an insufficient quantum of persuasive argument in Parus's brief. Appx25. The Supreme Court explained in *St. Mary's* that the appellants there had "sustained their burden of production" by "producing *evidence* (whether ultimately persuasive or not)"—no threshold quantum of persuasive argument was required. 509 U.S. at 509; *id.* at 511 ("The defendant's 'production' (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether the plaintiff has [met its burden of persuasion]."). Meeting the burden of production cannot turn on the presence of sufficient and sufficiently persuasive argument. *See id.* at 509, 511; Br. at 30.

Google points out that the bench trial in *St. Mary's* covered "a record including pleadings, witness testimony, and documentary evidence." G.Br. at 41. Of course, the same was true here—this record includes pleadings, witness testimony, and documentary evidence, all developed through briefing, submission of exhibits, discovery, and oral argument. Br. at 14-16. The Board nevertheless decided to disregard everything touching the antedating issue after finding that Parus had provided insufficient persuasive argument on that issue in its brief. Appx25. After, that is, the Board improperly placed the risk of nonpersuasion on Parus. That was error under *St. Mary's*. Br. at 27-33.

Google also argues that this Court's decisions in *Dynamic Drinkware* and *TLC* are consistent with *St. Mary's*. G.Br. at 43-44; *Dynamic Drinkware LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378-80 (Fed. Cir. 2015); *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326-27 (Fed. Cir. 2008). Critically, however, Google leaves unchallenged Parus's showing that the approach to the burden of production in those cases—that is, as a burden of proof—appears inconsistent with the approach taken by the Supreme Court in *Greenwich Collieries*. Br. at 30-33; *Dir. v. Greenwich Collieries*, 512 U.S. 267, 274 (1994). Indeed, Google does not cite *Greenwich Collieries* in its response.

Neither does Google challenge Parus's showing that this discrepancy flows in part from the historical fact that the antedating rules applied by the Board were "borrowed from the interference context," *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d at 1572, 1576 (Fed. Cir. 1996)—where, in contrast to the IPR context, the antedating inventor "bore the burden of proving priority by a preponderance of the evidence." *Cooper v. Goldfarb*, 154 F.3d 1321, 1326 (Fed. Cir. 1998). The case law is thus replete with borrowed references to what "the inventor must prove" to "establish" conception and reduction to practice. Appx12; Br. at 31-32.

That discrepancy appears to be at the heart of the Board's error. Google repeatedly cites the Board's footnote indicating that Parus had not "introduced th[e] evidence properly" so as to meet the burden of production. Appx21 (n.5); G.Br. at

23, 36, 40, 41. And Google repeatedly suggests that this analysis was based on an agency rule. G.Br. at 23, 36, 40, 41.[2] But it was not. It was based on a citation to a single authority—"*Magnum Oil Tools*, 829 F.3d at 1375-76." Appx21 (n.5). At that pin cite, *Magnum Oil Tools* discusses the passages from *Dynamic Drinkware* and *TLC* that are inconsistent with *Greenwich Collieries*, and explains that "a patentee *bears the burden of establishing* that its claimed invention is entitled to an earlier priority date than an asserted prior art reference." *Magnum Oil Tools*, 829 F.3d at 1375-76 (emphasis added). This is the language of a burden of proof, and even of persuasion—it is *not* the language of a burden of production approved by *Greenwich Collieries*. Br. at 31-32. Google's silence on this issue confirms that these appeals present the Court with an important opportunity to bring its own approach to the burden of production in line with that of the Supreme Court. Br. at 33.

**3. The Board's decision to disregard evidence conflicted with the governing IPR statutory and regulatory provisions.**

Google does not dispute Parus's reading of *SAS* and the petition-driven nature of the IPR design. Br. at 34-35; *SAS*, 138 S. Ct. at 1355, 1357. But Google does offer up a series of rules—none relied upon by the Board—that when read together,

[2] Indeed, Google suggests that the Board found that Parus failed to comply with a "basic procedural requirement" in the agency's rules and that Parus "does not contest" that finding on appeal. G.Br. at 40. That is false. The Board relied upon only one procedural rule in support of its decision: Rule 42.6(a)(3). Appx25. Parus vigorously contests how the Board applied that rule in these appeals. Br. at 24-44.

Google argues, might provide an alternative ground of support for the Board's decision. G.Br. at 45-47. That is, Rule 42.22(a) provides:

> Each petition or motion must be filed as a separate paper and must include: (1) A statement of the precise relief requested; and (2) A full statement of the reasons for the relief requested, including a detailed explanation of the significance of the evidence including material facts, and the governing law, rules, and precedent.

37 C.F.R. § 42.22(a). And under Rule 42.23(a),

> [o]ppositions, replies, and sur-replies must comply with the content requirements for motions and, if the paper to which the opposition, reply, or sur-reply is responding contains a statement of materials fact, must include a listing of facts that are admitted, denied, or cannot be admitted or denied.

*Id.* § 42.23(a). Finally, Rule 42.120(a) provides that, if a patent owner elects to file a response, it "is filed as an opposition and is subject to the page limits provided in § 42.24." *Id.* § 42.120(a); *see* G.Br. at 45-47.

Google draws from this set of rules the conclusion that, to meet the burden of production on an antedating issue, a patent owner must offer not only evidence with an explanation that it is submitted to show prior conception, reduction to practice, and reasonable diligence toward reduction to practice—as Parus did here (Br. at 14-16)—but also detailed attorney argument explaining how the evidence demonstrates, at a limitation-by-limitation level, prior conception, reduction to practice, and diligence toward reduction to practice for every element of every claim. G.Br. at 45-47. These agency rules, however, *do not say that*: none addresses the quantum of

argument required to meet a burden of production. And to the extent they might be read to shift the risk of nonpersuasion onto the patent owner, or to permit the Board to disregard record evidence that conflicts with its conclusion of unpatentability—as Google's approach would require—then they would come into direct conflict with the governing statutory provisions of the AIA and APA. Br. at 24-36.

Indeed, under Google's approach, these rules would require precisely the same quality and quantum of attorney argument to meet a burden of production as to meet a burden of persuasion. That makes no sense, and runs counter to the Supreme Court's approach to the burden of production in *St. Mary's*. *See supra* at 11-13; Br. at 29-33. Because the rules do not *explicitly* require the same quality and quantum of attorney argument to meet a burden of production as to meet a burden of persuasion, they should not be read so as to *implicitly* impose such a requirement, which would bring them into conflict with Supreme Court precedent.

In any event, these appeals provide no occasion to reach the question of Google's proposed combined reading of Rules 42.22(a), 42.23(a), and 42.120(a). The Board did *not* rely upon those rules as supporting its decision. It relied upon Rule 42.6(a)(3). Appx25. As noted above, "review of an administrative decision must be made on the grounds relied on by the agency." *Lee*, 277 F.3d at 1345. If the judgment cannot be affirmed on the ground of Rule 42.6(a)(3), and it cannot, then this Court should "set aside the agency's action and remand the case—even though

the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason." *Federal Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998). The Court should thus "decline to consider alternative grounds that might support the Board's decision," *Lee*, 277 F.3d at 1345-46, and simply reverse or vacate and remand.

**4. The Board's decision to disregard evidence cannot be justified by application of 37 C.F.R. § 42.6(a)(3).**

Google bases its defense of the Board's decision on its combined reading of Rules 42.22(a), 42.23(a), and 42.120(a)—rather than on Rule 42.6(a)(3). But Google does argue that there are "parallels" between this case and the unpublished decisions addressing Rule 42.6(a)(3) in *GAS* and *Boston Scientific*. G.Br. at 49-51; *General Access Sols., Ltd. v. Sprint Spectrum L.P.*, 811 F. App'x 654, 656-57 (Fed. Cir. 2020) (unpublished); *Bos. Sci. Neuromodulation Corp. v. Nevro Corp.*, 813 F. App'x 572, 582-83 (Fed. Cir. 2020) (unpublished). Parus does not dispute that there are parallels between this case the decisions in *GAS* and *Boston Scientific*, and Parus addressed both *GAS* and *Boston Scientific* in depth in its brief. Br. at 38-43. There is no need to repeat that discussion in reply.[3] Critically, those decisions are not precedential,

[3] Google makes much out of the question whether claim charts are evidence or argument, and asserts that *GAS* supports the conclusion that they are argument. G.Br. at 49-50. This is a red herring. Whatever the particular status of claim charts as argument or evidence, Google agrees that the rest of the record still contains a "mountain" of evidence disregarded by the Board. G.Br. at 2, 29, 52.

and neither addressed or resolved the questions raised in these appeals. Neither did those decisions address or resolve the conflict, highlighted here, between the approach to the burden of production taken in this case and the approach approved by the Supreme Court. Br. at 29-33, 38-43.

It is further worth noting that the terms of Rule 42.6(a)(3) undermines one of Google's central arguments. Google repeatedly suggests that the Board was justified in refusing to consider the antedating evidence because it was not "properly introduce[d]"—and thus not before the Board for purposes of meeting the burden of production. G.Br. at 2, 28, 36, 40, 41. But Rule 42.6(a)(3) *assumes* that the "document[s]" are before the Board. It *assumes* that the Board has examined both the "document" containing the argument as well as the "document" incorporating the argument by reference. Only by considering both documents could the Board determine that an argument had been "incorporated by reference from one document into another document." 37 C.F.R. § 42.6(a)(3). Indeed, as Google points out, the Board spent some "ten pages" discussing the antedating evidence and the quantum of related attorney argument in Parus's brief (G.Br. at 21)—before deciding to disregard it all under Rule 42.6(a)(3). Appx15-25. Had the Board spent those same ten pages resolving the four particular disputes regarding that evidence raised by the

party with the burden of persuasion, it could have issued a substantive determination properly based on the entirety of the record. Br. at 24-26.[4]

Google also disputes Parus's showing that the policy concerns mentioned in *GAS* were not implicated here, and should not be threatened if the rules are applied correctly. *Compare* G.Br. at 51-53 *with* Br. at 40-44. Google suggests that the Board must not be forced to "play archaeologist with the record," G.Br. at 52—but as Parus demonstrated, there was no need for the Board to do so. Google did not dispute prior conception, so that issue was settled. Br. at 16. Regarding reduction to practice, Google offered four arguments challenging the sufficiency of Parus's antedating evidence. The Board needed only to resolve those arguments: the particular disputes raised by the party bearing the burden of persuasion. Br. at 40-44.

Google further argues that the rules are designed to prevent "unfair[ness]" to the parties, and that it was "unfair" to require Google "to sort through" the exhibits submitted by Parus "and then present arguments for the Board's consideration as to why this evidence fails to antedate Kovatch"—to "refute" how it "***might***" prove conception, reduction to practice, and diligence. G.Br. at 52-53. Respectfully, there is nothing unfair about that at all. That is a consequence flowing naturally from the

[4] When the Board has engaged in a more substantive review and consideration of Kovatch, as in a recent decision denying institution, it has concluded that Kovatch does not present a substantial question of patentability for family members of the '431 and '084 patents. *See Google LLC v. Parus Holdings, Inc.*, No. IPR2022-00279, Paper 7 (P.T.A.B. July 1, 2022) (Decision Denying Institution of IPR).

fact that Google petitioned for the IPR. And as part of its burden to prove unpatentability of an issued patent, Google bore the burden to prove that "this evidence fails to antedate Kovatch." *See id.*; Br. at 27-28. That burden required Google to carefully sort through the evidence and present arguments for why, notwithstanding Parus's antedating exhibits, Google could still prove unpatentability by a preponderance of the evidence. 35 U.S.C. § 316(e). There is nothing unfair, in other words, about holding Parus only to a burden of production, while holding Google to its statutorily mandated burden of persuasion.

The unfairness lies in the approach adopted by the Board, as well as the one proposed by Google: both approaches require the same quality and quantity of exhaustive limitation-by-limitation attorney argument to meet a burden of production as to meet a burden of persuasion. In its brief, Parus demonstrated that the Board's understanding of the burden of production could require inventors to spend the entirety of their response trying to meet a burden of producing evidence—causing them to lose their right to rebut the contentions advanced by the petitioner. Br. at 42-43. In response, Google argues that inventors can seek permission to exceed the word-count limit. G.Br. at 52; 37 C.F.R. § 42.24(a)(2). But the proposal that inventors might seek an exception to the rules to avoid unfairness does not suggest that the rules are fair under Google's proposed reading. To the contrary, it

is a concession that, if Google's proposed reading of the rules is right, those rules are unfair in the absence of an exception. *See* G.Br. at 52.

Google bore the burden of persuasion on the antedating disputes. After examining the exhibits Parus submitted to show prior conception, reduction to practice, and diligence, Google offered four challenges to that evidence. Rather than resolving those challenges, the Board refused to consider the issue on the merits at all, and invalidated Parus's patented inventions without determining whether Google had met its burden of persuasion on antedating. That was unfair to Parus, and it was an error under the APA, the AIA, and the law governing burdens of production.

The Board's determination that Kovatch is prior art should be reversed, its judgment resting on that determination vacated, and the matter remanded.

### B. The Board Legally Erred When It Found That the Remaining Challenged Claims Lacked Written Description Support.

#### 1. The Board's written description determinations exceeded its statutory authority.

In its brief, Parus demonstrated that the Board exceeded its statutory authority when it found that the remaining claims lacked written description support. Br. at 44-48. In response, Google offers three arguments: (1) this issue is purportedly waived; (2) in *Arthrex* this Court recently confirmed that the Board may consider written description issues that are necessary to resolve obviousness or anticipation grounds on which an IPR is based; and (3) the written description analysis

undertaken by the Board in this case was merely "a necessary predicate to adjudicating" the obviousness grounds asserted by Google. G.Br. at 53-56; *see also Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022). These arguments do not justify affirmance in the circumstances present here.

1. The Court should not find the issue waived. Google concedes that Parus made the argument that the Board lacked statutory authority to institute in the preliminary response prior to institution. G.Br. at 53; Appx1171-1172, Appx9301-9302. This is not like the *NuVasive* case cited by Google, where the appellant expressly abandoned an issue at trial. G.Br. at 54; *In re NuVasive* , 842 F.3d 1376, 1380 (Fed. Cir. 2016). Furthermore, the issue relates to the Board's statutory authority to hear these claims—it is jurisdictional in nature. And jurisdictional issues are not subject to waiver or forfeiture. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *Hambsch v. United States*, 848 F.2d 1228, 1229-30 (Fed. Cir. 1988). Even if it were not jurisdictional, the Court should exercise its discretion to address this significant question of statutory authority. Indeed, in the *Arthrex* decision Google highlights, the Court addressed this question notwithstanding a similar argument that the issue had been forfeited. 35 F.4th at 1344, n.7.

2. *Arthrex* addressed circumstances in which an obviousness challenge was essential to the relevant theory of invalidity—not merely a pleading stratagem to lodge a written description ground before the Board. In *Arthrex*, that is, the written

description analysis truly was "a necessary predicate to adjudicating" the obviousness grounds properly before the Board. *See* G.Br. at 53-56.

The patent at issue there claimed priority to an earlier application "through a series of intervening continuation, continuation-in-part, and divisional applications." *Arthrex*, 35 F.4th at 1342. Those applications were *not* substantially identical—earlier and later applications in the chain expressly disclosed the claimed element, while an intervening application criticized and taught away from it. *Id.* at 1340-43; *see also id.* at 1344 (explaining that while "there is no dispute that" an earlier "'280 application discloses" support "for flexible eyelets," an intervening "'707 application denigrates flexible eyelets and exclusively describes alternatives to overcome their disadvantages"); *Smith & Nephew, Inc. v. Arthrex, Inc.*, No. IPR2017-00275, 2018 Pat. App. LEXIS 7285, at *22-23 (P.T.A.B. May 2, 2018) (noting the allegations that, while earlier and later applications disclosed the element, certain intervening applications did not). Resolving the genuinely asserted obviousness grounds thus required the Board to determine whether the challenged claims were entitled to priority based on the later or earlier applications that disclosed the recited element—an actual priority date for the challenged claims had to be determined. *See Arthrex*, 35 F.4th at 1343-44. Put another way, the asserted obviousness grounds were essential to the petitioner's theory of invalidity.

What *Arthrex* did *not* decide was whether the Board has authority to resolve written description questions when they are not a necessary predicate to an essential obviousness theory. When, that is, the obviousness grounds are asserted simply as a strategic pleading device to pursue before the Board an *actual* theory of invalidity based on written description. An established Supreme Court doctrine recognizes this problem in the patent context, and precludes parties from skirting statutory jurisdictional limits through strategic pleading: the well-pleaded complaint rule. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-10 (1988).

Under this doctrine, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.* at 810. A similar rule should apply here: if one of "the grounds on which an IPR petition may be based," *see Arthrex*, 35 F.4th at 1344-45, is not "essential" to the claim of invalidity, *see Christianson*, 486 U.S. at 810, then the Board should have no authority to resolve that claim under 35 U.S.C. § 311(b). *See* Br. at 44-48. Indeed, such a rule would be much like the approach historically adopted by the Board itself, which holds that challenges raising written description arguments are permissible only when "the issue is not whether there is sufficient description in the [challenged patent], but whether the written description in the earlier application supports [the patent owner's] claim to priority." *See SAP*

*America, Inc. v. Lakshmi Arunachalam*, No. IPR2014-00414, 2015 Pat. App. LEXIS 12541 (P.T.A.B. Aug. 17, 2015); Br. at 45-46.

3. Applying that rule here leads to the conclusion that the Board had no authority to resolve the written description allegations asserted by Google. The obviousness claim was *not* essential to Google's theory of invalidity, and the written description analysis was *not* merely a necessary predicate to reaching the genuinely asserted obviousness grounds. Here, the applications in the chain were substantially identical. The Board did not determine *which* application in the chain supplied the *actual* priority date for obviousness purposes: it determined that *no* application contained written description support for the challenged claims at issue. Appx54; Br. at 46. It determined, in effect, that these claims had no priority date at all—that there was no written description support anywhere for the challenged claims. Indeed, the Board's written description analysis cites *exclusively* to the specification of the '431 patent. Appx53-61; Br. at 46. Google's response does the same. G.Br. at 57.

In its brief, Parus demonstrated that the obviousness ground was nothing more than a strategic tack-on; that Google had offered the same written description arguments as grounds for invalidity in the district court; and that identifying these grounds as obviousness theories, rather than as written description theories, was the tail wagging the dog. Br. at 44-48. Google contests *none* of that in its response.

The Court should take this important opportunity to make clear that *Arthrex* does not reach so far as to violate the principles undergirding the well-pleaded complaint doctrine: when a proper ground is not *essential* to the theory of invalidity, but the written description allegation *itself* would constitute a theory of invalidity, then the Board has no authority to hear that claim under 35 U.S.C. § 311(b).

**2. The Board's written description analyses were legally deficient.**

Because the proper result on this issue is reversal for lack of authority, there should be no need to reach the merits of the Board's written description analyses. But as shown in Parus's brief, those analyses were also deficient. Br. at 48-54.

In response, Google spends time highlighting arguments that, Google asserts, Parus does not advance on appeal. G.Br. at 57-60. That is neither here nor there: as every appellant should, Parus carefully selected the issues and arguments to advance in this Court. Parus explained that the Board improperly read a critical passage of the specification describing *relevance and similarity* between two embodiments as positing *irrelevance and dissimilarity* between those embodiments—and as making the teachings in one part of the specification inapplicable to the teachings in another. Br. at 51. That was a clear error in the Board's written description analysis. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (noting that the written description test requires an inquiry from the perspective of a person of skill into all "four corners of the specification"); Br. at 49-52.

On this point, Google argues in response that a person of skill "would not have understood the two embodiments to be interchangeable," and points to the Board's finding that Parus "'has not adequately explained how' the second embodiment's polling 'could be applied to identify new web sites.'" G.Br. at 60; Appx59-60. But there was no need for the two embodiments to be interchangeable, nor was there any need for complicated explanations beyond a recognition that the descriptions of the (second) networked "devices" embodiment were relevant to understanding the descriptions of the (first) networked "web sites" embodiment. As Parus explained in its brief, the element at issue recited, in relevant part: "to identify new web sites and to add the new web sites to the plurality of web sites." Br. at 49; Appx136. And the specification's second embodiment taught "the same robustness and reliability features described in the first embodiment"—including the ability to detect "new devices" and mark them "as being … new" in the networked system. Appx113 (19:10-28). Nothing more should have been required. Br. at 49.

Parus also pointed out that the Board appeared to rely, at least implicitly, on an unexpected and contradictory construction of the claim term "web sites"—one in which "web sites" are not web sites. Br. at 52-54. Google briefly asserts that this argument is forfeited. G.Br. at 62-63. But this is not a scenario in which a party offers one construction to the Board and argues for a different construction on appeal; that would implicate forfeiture. Parus's point is that the Board, while disclaiming

reliance on any explicit claim construction, appeared to rely on a construction of "web sites" that makes little sense. Br. at 52-53. Parus did not forfeit its complaint that the actual analysis offered by the Board contains legal error.

As to that analysis, Google argues that the Board *in fact did* engage in claim construction (G.Br. at 64)—notwithstanding the Board's assertion that it did "not find it necessary to provide express claim constructions for any terms" (Appx10). Google argues that the Board "afford[ed] 'web site' its plain meaning—an actual website …." G.Br. at 63. But that cannot be right. There should be no dispute that actual websites can "appear as 'web sites'" based on the teachings of the specification (Br. at 52-54), yet the Board concluded otherwise (Appx58-59).

At the very least, remand is appropriate on this issue as well.

## CONCLUSION

For these reasons, the judgments should be reversed or vacated and remanded for further proceedings.

Respectfully submitted,

*/s/ Joel L. Thollander*
Joel L. Thollander
John B. Campbell
MCKOOL SMITH, P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
(512) 692-8700
*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Reply Brief:

1. Complies with the type-volume limitation of Fed. Cir. R. 32(b)(1). This brief contains 6,985 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). Microsoft Word was used to calculate the word count.

2. Complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman type style.

Dated: September 9, 2022

*/s/ Joel L. Thollander*
Joel L. Thollander